**UNITED STATES of America,**
**Appellee,**

v.

**William Wiley JONES, Defendant-**
**Appellant.**

**No. 57, Docket 30409.**

United States Court of Appeals
Second Circuit.

Argued Oct. 5, 1966.

Decided Nov. 21, 1966.

Joshua N. Koplovitz, New York City (Anthony F. Marra, New York City, on the brief), for defendant-appellant.

James W. Dolan, Asst. U. S. Atty. (Justin J. Mahoney, U. S. Atty., for Northern District of New York, on the brief), for appellee.

Before SMITH, HAYS and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

This is an appeal from a conviction under 18 U.S.C. § 1407, a seldom litigated section of the laws governing narcotics, which deals with border crossings by addicts or narcotics laws violators. Although appellant William Wiley Jones raises basic constitutional issues, it is unnecessary to decide them. Because the Government failed to follow its own regulation, appellant's conviction must be reversed.

18 U.S.C. § 1407, printed in full below,[1] *inter alia*, makes it a felony for an

1. § 1407. Border crossings—narcotic addicts and violators

(a) In order further to give effect to the obligations of the United States

American citizen to depart from or enter the United States without registering under such rules as the Secretary of the Treasury prescribes if such person is a narcotics addict or user or has ever been convicted of violation of any state or federal narcotics law for which the penalty is imprisonment for more than one year. The statute prescribes that when such person leaves the United States, a customs official shall issue him a certificate, which he shall surrender upon return. The Regulation promulgated under the statute, 19 C.F.R. § 23.9a (1966), provides that upon leaving the country a citizen subject to the statute must register on customs Form 3231, "Registration Certificate of Narcotic User or Violator," the original of which is given to the registrant. Upon return, he must register again by signing the original and surrendering it to a customs officer. The Regulation sensibly goes on to deal with loss or non-possession of a certificate at the time of re-entry, possibilities left open by the statute, by providing that:

> If the person seeking to register did not obtain a registration certificate on leaving the United States, or, having obtained a certificate, has lost it or for any reason he cannot present the

certificate, he shall register on customs Form 3231 supplied by the customs officer immediately at the first port of arrival in the United States, and surrender the completed form to the collector of customs.

Jones was tried by Judge Edmund Port and a jury in the United States District Court for the Northern District of New York on two counts for violation of the statute and the Regulation. Taking the indictment in its reverse order, Count II charged Jones with failing to register when he left the United States for Canada on or about September 15, 1964, at or near Champlain, New York. Count I charged Jones with failing to register and with failing to surrender the certificate required to be obtained upon leaving the United States when he returned to the United States at Rouses Point, New York on or about July 13, 1965. The jury found Jones guilty on Count I but not guilty on Count II. Judge Port imposed a two-year sentence on defendant.

Since appellant was acquitted of failing to register when he left the United States (Count II), the focus on appeal is his conviction for failing to register on his return (Count I). It is undisputed that Jones had been convicted of a narcotics

pursuant to the Hague convention of 1912, proclaimed as a treaty on March 3, 1915 (38 Stat. 1912), and the limitation convention of 1931, proclaimed as a treaty on July 10, 1933 (48 Stat. 1571), and in order to facilitate more effective control of the international traffic in narcotic drugs, and to prevent the spread of drug addiction, no citizen of the United States who is addicted to or uses narcotic drugs, as defined in section 4731 of the Internal Revenue Code of 1954, as amended (except a person using such narcotic drugs as a result of sickness or accident or injury and to whom such narcotic drug is being furnished, prescribed, or administered in good faith by a duly licensed physician in attendance upon such person, in the course of his professional practice) or who has been convicted of a violation of any of the narcotic or marihuana laws of the United States, or of any State thereof, the penalty for which is imprisonment

for more than one year, shall depart from or enter into or attempt to depart from or enter into the United States, unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury with a customs official, agent, or employee at a point of entry or a border customs station. Unless otherwise prohibited by law or Federal regulation such customs official, agent, or employee shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate to the customs official, agent, or employee present at the port of entry or border customs station.

(b) Whoever violates any of the provisions of this section shall be punished for each such violation by a fine of not more than $1,000 or imprisonment for not less than one nor more than three years, or both.

offense in 1956 and sentenced to two years in prison.[2] Sometime prior to July 13, 1965, Jones went to Canada. On that date, he was deported from that country; Canadian officials put Jones on a train from Montreal bound for New York and kept him in custody at least until the last Canadian stop was reached. Having been alerted by Canadian officials, two United States customs agents, Gardner and Cornetta, boarded the train when it stopped at Rouses Point, New York, the first American border customs station on the rail line, and questioned Jones. Their testimony was substantially the same. They asked Jones who he was and where he was going; without equivocation he gave his name and destination (New York). Upon further inquiry, Jones also readily agreed that he was the same person who had been convicted in Connecticut in 1956, and named the place where he had left the United States for Canada. When asked if he had a registration certificate, Jones replied that he did not, but claimed that he had no obligation to register since his narcotics conviction stemmed from a crime committed over ten years ago. Agent Cornetta told Jones that there was no such exemption in the law and had him read a "warning" sign concerning 18 U.S.C. § 1407 on the wall in the customs office. Jones repeated his erroneous view that the time lag excused him from registering and added that the law had been so explained to him once by a customs agent in Washington. Jones was then arrested.

On cross-examination, Agent Cornetta stated that customs Form 3231 was available at the customs office. Both Cornetta and Gardner admitted however that they did not at any time offer to supply one to Jones. Their specific responses are significant.

Agent Cornetta:

Q. Well, you went through all this trouble to explain what the law was, yet you didn't hand him a form pre-scribed by Customs officers? A. That is correct.

\* \* \* \* \* \*

Q. But you arrested him, did you not, for failing to sign that form? A. Among other things, yes, sir.

Q. And you never even presented the form to him? A. It is not my job. I can't force a person to do anything. It is unconstitutional.

Agent Gardner:

Q. When Mr. Jones came into the Customs office and you found out he had no certificate to surrender, did you hand him the Form 3231 so he could fill it out? A. No, sir.

Q. You were aware of the fact that your chief has prescribed the regulation stating that if a person for any reason has no such certificate to surrender that the officer will supply him with such a form? A. At his request.

Jones presents several grounds for appeal. He argues that the statute is an arbitrary and unreasonable restraint on his constitutional right to travel; he claims that where a citizen has left the country without registering, thus committing a crime, requiring him to register upon re-entry violates his privilege against self-incrimination; assuming this argument correct, he argues the statute should be construed to create the unitary crime of failing to register either on departure or re-entry, but not both; he contends that whatever the standard of intent under the statute, it is not so broad as to encompass the case of one who, by reason of being deported into the United States, enters completely involuntarily. Finally, appellant urges that his conviction violates due process, arguing that there is no evidence that he knew of the requirement to fill out a Form 3231 on re-entry and that the crime could have been avoided entirely if the customs agents had simply advised him that he could register on a new form and provided him with one.

■ Since we feel that the last point comes close to the heart of the case, we

---

2. On December 18, 1956, Jones was convicted in the United States District Court for the District of Connecticut of violating 26 U.S.C. §§ 4704, 7237.

will first address ourselves to it. It is undisputed that at no time was Jones supplied Form 3231 on which he could register, even though the Regulation provided that if Jones "for any reason" could not present an original form acquired on leaving the country, he was entitled and required to "register on customs Form 3231 *supplied* by the customs officer * * *." (Emphasis added.) We interpret this Regulation as placing an affirmative duty on the customs officers, in the circumstances of this case, to supply Jones with Form 3231 on which to register. That the requirement is not a mere formality is shown by what transpired here.

The record does not indicate that Jones was aware that he could still comply with the law on re-entry even though he might have improperly left the country without obtaining the form. The Government claims that Jones knew of his duty to register upon re-entry because it was explained to him by customs agents on two previous occasions and because, before his arrest, Jones was shown a sign summarizing the statute. But neither the conversations a year or two before nor the sign in the customs shed indicated the proper course for one who had not filled out a form on departure or who for any other reason had no form to surrender upon return. Jones apparently gave the customs agents orally more information than filling out the form would have supplied, including his identity, prior conviction, place of prior departure and present destination.[3] It seems unreasonable that Jones would admit all

of this and yet not fill out the form had he been aware that simply by doing so he could avoid punishment of up to three years imprisonment and a $1,000 fine. The point is not whether Jones knew generally of his duty to register; it is whether he regarded himself as irretrievably trapped because he had no certificate to surrender. Regardless of whether intent to violate the statute is an element of the crime,[4] supplying Form 3231 to Jones would have made unmistakably clear that at least he could avoid a re-entry crime. To this opportunity for compliance, the Regulation entitled him. It is, of course, possible that Jones would still have stubbornly refused to register on the ground that his prior violation was too ancient to require it; but it is much more likely that this claim was a fabrication to avoid arrest, based on fear that without such an excuse he had irreparably violated the law both on leaving and on re-entry. In any event, imprisonment for two years cannot stand on such speculation in the face of the Regulation.

Our interpretation of the Regulation finds support not only in the common connotation of the term "supplied" but perhaps more importantly on an assessment of the legislative purpose of 18 U.S.C. § 1407 and on principles of fair play by officers of the law. Section 1407 itself sets out the intent of Congress to give effect to certain specific treaty obligations "to facilitate more effective control of the international traffic in narcotic drugs, and to prevent the spread of drug addiction." As the Ninth Circuit observed in Reyes v. United States, 258

---

3. At least, Form 3231 does not call for a statement of eventual destination. Moreover, at oral argument the Assistant United States Attorney stated that a person filling out a new form upon re-entry might not be required to complete certain answers the form requires upon departure, e. g., where, when, and by what means the registrant was leaving the United States. That these items may not be necessary may have some bearing on appellant's contention that completing a form on re-entry would have tended to incriminate him for failing to register upon departure. Of course, we express no opinion on that issue.

4. See United States v. Juzwiak, 258 F.2d 844 (2d Cir. 1958), cert. denied, 359 U. S. 939, 79 S.Ct. 652, 3 L.Ed.2d 639 (1959) (alternative holding that knowledge of the law is not an element of the crime). But cf. Lambert v. People of State of California, 355 U.S. 225, 78 S. Ct. 240, 2 L.Ed.2d 228 (1957). The issue was, however, apparently submitted to the jury. Judge Port charged that: "The question that you will have to answer is, is there evidence from which it can be found that the defendant properly had knowledge of the duty to register."

F.2d 774, 785 (1958), approving United States v. Eramdjian, 155 F.Supp. 914 (S.D.Cal.1957):

> The purpose of the statute * * * as expressed in its preamble and from a logical consideration of the problem, is to reduce and control the amount of illegal narcotics crossing the border by checking carefully the person and possessions of those most likely to be importing the drugs.

If the customs officials are fully informed and the person involved readily admits his true identity and status as a prior narcotics law violator, that goal is achieved. Certainly, no further valid purpose is served in trapping a person who has no certificate to surrender into committing an unintentional violation on re-entry by failing to inform him of his opportunity to register on a new form. Reyes v. United States, supra, Palma v. United States, 261 F.2d 93 (5th Cir.1958) (per curiam), and United States v. Eramdjian, supra, cited by the Government, are not in point since neither was decided on the basis of the meaning of 19 C.F.R. § 23.9a. Our decision rests on the principle that because the Government has failed to follow its own regulation, promulgated in the proper exercise of the Secretary of the Treasury's discretion, its action can have no effect. In other words, having failed to supply Jones with Form 3231 and to give him the opportunity to register provided for in the Regulation, his arrest and indictment are invalid. There is no novelty in holding that where an official is given discretionary power by statute, promulgates regulations as to how the power is to be exercised and then fails to follow his own regulations, the action is of no effect. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). See also Yellin v. United States, 374 U.S. 109, 83 S.Ct. 1828, 10 L.Ed.2d 778 (1963); United States v. Cargo Salvage Corp., 228 F.Supp. 145, 155 (S.D. N.Y.1964).

The Government at oral argument suggested that the Regulation is *ultra vires* the statute in imposing an affirmative obligation in some situations on the customs officers and in providing for an alternative means of registering on return by filling out a new form, instead of completing and surrendering an original form acquired on departure. Perhaps under the terms of 18 U.S.C. § 1407, the Secretary of the Treasury could have made surrender of the original form a person was obliged to obtain on departure the only means of registering on re-entry. But, with common sense and apparently an understanding of the frailty of human nature, the Secretary has exercised his statutory discretion to provide another means of complying with the law when returning from abroad; we see no abuse of authority. Moreover, appellant was indicted and tried for violating not just 18 U.S.C. § 1407 but also the Regulation.

Our decision thus has limited effect. It does not deal with the question of whether knowledge of the law is an element of the crime.[5] Nor does it apply to those who are seeking to slip into the country undetected or with their addiction or prior narcotics violation undisclosed. Such a citizen would not be a "person seeking to register" under the Regulation, unlike appellant who, whatever else he might have said, fully disclosed all relevant information and was therefore entitled to be supplied the Form. We hold that the Government's failure to supply Jones with Form 3231 in these circumstances is fatal to its prosecution of a claim of non-registration upon re-entry. The judgment is reversed and the case remanded with the direction that the district court enter judgment of acquittal.[6]

---

5. See note 4 supra.

6. It should be noted that appellant has already served approximately one year of his two-year sentence.