**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ernest SANSONE, Defendant-Appellant.
No. 16004.**

United States Court of Appeals
Seventh Circuit.
Oct. 10, 1967.

John Powers Crowley, Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., Gerald M. Werksman, Chicago, Ill., John Peter Lulinski, Joseph A. Lamendella, Asst. U. S. Attys., of counsel, for appellee.

Before SWYGERT, FAIRCHILD and CUMMINGS, Circuit Judges.

SWYGERT, Circuit Judge.

Ernest Sansone appeals from a judgment of conviction on an indictment charging him with failing to register with a customs official upon his return to the United States as required by 18 U.S.C. § 1407 and the regulation issued pursuant thereto.[1] That statute and reg-

---

1. 18 U.S.C. § 1407 provides:

(a) In order further to give effect to the obligations of the United States pursuant to the Hague convention of 1912, proclaimed as a treaty on March 3, 1915 (38 Stat. 1912), and the limitation convention of 1931, proclaimed as a treaty on July 10, 1933 (48 Stat. 1571), and in order to facilitate more effective control of the international traffic in narcotic drugs, and to prevent the spread of drug addiction, no citizen of the United States who is addicted to or uses narcotic drugs, as defined in section 4731 of the Internal Revenue Code of 1954, as amended (except a person using such narcotic drugs as a result of sickness or accident or injury and to whom such narcotic drug is being furnished, prescribed, or administered in good faith by a duly licensed physician in attendance upon such person, in the course of his professional practice) or who has been convicted of a violation of any of the narcotic or marijuana laws of the United States, or of any State thereof, the penalty for which is imprisonment for more than one year, shall depart from or enter into or attempt to depart from or enter into the United States, unless such person registers, under such rules and regulations as may be prescribed by the Secretary of the Treasury with a customs official, agent, or employee at a point of entry or a border customs station. Unless otherwise prohibited by law or Federal regulation such customs official, agent, or employee shall issue a certificate to any such person departing from the United States; and such person shall, upon returning to the United States, surrender such certificate to the customs official, agent, or employee present at the port of entry or border customs station.

(b) Whoever violates any of the provisions of this section shall be punished for each such violation by a fine of not more than $1,000 or imprisonment for not less than one nor more than three years, or both.

19 C.F.R. § 23.9a provides in part:

Any U.S. citizen * * * who has been convicted of a violation of any of the narcotic or marijuana laws of the United States, * * * the penalty for which is imprisonment for more than one year, shall register his departure from the United States with the collector of customs at the port of departure on Customs Form 3231, Registration Certificate of Narcotic

ulation require a convicted narcotics law violator and citizen, sentenced to a term of imprisonment in excess of one year, to register upon departing from or returning to the United States. On November 29, 1943, the defendant was convicted of concealing narcotics and for unlawful importation in violation of 21 U.S.C. § 174.[2] Subsequent to that conviction 18 U.S.C. § 1407 was enacted in 1956.

On January 5, 1965, the defendant was in Detroit, Michigan on the way to Ontario, Canada for treatment of a severe eye condition. On the advice of a friend, he went to the United States Customs Office and reported his prior narcotics conviction. Because the defendant was totally incapable of reading even average-sized print, a customs inspector filled out the requisite form for him and the defendant then signed it. The form filled out was customs form 3231 required by 19 C.F.R. § 23.9a (1967), although the defendant testified that he thought the form was required pursuant to an agreement between the United States and Canada.

When the defendant reached Canada, he was met by a Canadian immigration officer who questioned him. The defendant freely admitted his prior narcotics conviction, whereupon the officer informed him that he was a prohibited person from Canada. He was ordered de-

ported and upon his return to the United States, he surrendered the registration form he had previously signed.

In February 1965, the defendant was preparing to go to Mexico to obtain treatment for his eye condition. He testified that to avoid a repetition of the Canadian incident, he contacted his attorney who advised him to get in touch with the Mexican Consulate in Chicago; that he called the Consulate and was informed that the only requirements for travel to Mexico were proof of birth and citizenship. He left for Mexico by way of New Orleans on February 11, 1965, but failed to fill out form 3231 upon his departure from the United States.

On February 26, 1965, the defendant returned to the United States from Mexico, entering at O'Hare International Airport in Chicago. When the defendant entered the customs area at the airport, he was observed by United States Customs Agent Kane for approximately fifteen minutes. Agent Kane testified that an 8½ by 12 inch sign was placed in the customs inspection area, generally warning convicted narcotics law violators of the duty to register before departing and upon returning to the United States.[3] He further testified: "I knew that an Ernest Sansone had been convicted of a narcotics violation. I did not ask the defendant if he was that Ernest Sansone."

User or Violator. The original shall be given to the registrant who upon his return to the United States shall immediately register with the collector of customs at the first port of arrival by signing before a customs officer in the space provided for this purpose on the original and by surrendering the completed form to the customs officer. If the person seeking to register did not obtain a registration certificate on leaving the United States, or, having obtained a certificate, has lost it or for any reason he cannot present the certificate, he shall register on Customs Form 3231 supplied by the customs officer immediately at the first port of arrival in the United States, and surrender the completed form to the collector of customs.

2. The defendant was sentenced to eighteen months imprisonment on that charge.

3. The contents of the sign are as follows:

WARNING

TO NARCOTIC USERS OR VIOLATORS

ANY UNITED STATES CITIZEN WHO IS ADDICTED TO OR USES NARCOTIC DRUGS OR WHO HAS BEEN CONVICTED OF A VIOLATION OF ANY FEDERAL OR STATE NARCOTIC OR MARIHUANA LAW FOR WHICH THE PENALTY IS IMPRISONMENT FOR MORE THAN ONE YEAR, IS REQUIRED BY LAW TO REGISTER WITH THE COLLECTOR OF CUSTOMS BEFORE DEPARTING FROM, AND UPON RETURNING TO THE UNITED STATES. PENALTY FOR FAILURE TO REGISTER WILL SUBJECT THE OFFENDER TO FINE AND IMPRISONMENT (18 U.S.C. 1407).

Although Agent Kane had access to a supply of registration forms, he neither gave one to the defendant nor told him of his duty to register.

Inspector Circione was on duty in the customs area when the defendant passed through customs. Agent Kane testified that he couldn't recall if he told Inspector Circione whether an Ernest Sansone had previously been convicted of a narcotics offense, but believed Circione was advised. Kane further testified that Circione inspected the luggage and found no narcotics.

The principal question in this appeal concerns the propriety of Agent Kane's and Inspector Circione's conduct upon the defendant's arrival at O'Hare Airport when viewed against the background of the defendant's own conduct. Treasury Regulation 19 C.F.R. § 23.9a regulates the conduct of customs officers with respect to the implementation of the registration requirements of 18 U.S.C. § 1407. The district judge made no mention of the regulation nor did he indicate that he had considered its provisions in arriving at his decision. His determination of guilt was apparently based on the following statement made at the time of sentencing:

> You [the defendant] were fully informed that it was illegal when you made the attempt to go into Canada and were refused. The evidence showed you were fully informed that it was illegal for you to do it when you went down to Mexico after you were refused admission into Canada, so far as that is concerned.

After the defendant had been convicted and sentenced in this case, United States v. Jones, 368 F.2d 795 (2d Cir. 1966) was decided. On facts slightly different from those presented here, the court in *Jones* construed 19 C.F.R. § 23.9a as it relates to the duty of customs officers to supply forms to those individuals suspected of having narcotics convictions. After

Jones was deported from Canada, he was put on a train and returned to the United States in the company of Canadian officials. Having been alerted, two United States customs agents boarded the train at the first stop in the United States and questioned Jones. He freely admitted his name, destination, and the fact that he had previously been convicted of a narcotics violation. He also admitted that he had no registration certificate (required when he went from the United States to Canada), claiming that he had no obligation to register. Jones was told that he was not exempt from registering and to read a warning sign concerning registration on the wall of the customs office. As in the instant case, the agents admitted that a supply of registration forms was available but that at no time did they offer one to Jones. He was thereupon arrested for violating 18 U.S.C. § 1407.

In reversing the judgment of conviction, the Second Circuit construed the regulation as requiring the customs agents to supply a form and thereby to provide an opportunity to register to those in the position of Jones. This interpretation of the regulation was based not only on "the common connotation of the term 'supplied' but perhaps more importantly on an assessment of the legislative purpose of 18 U.S.C. § 1407 and on principles of fair play by officers of the law." 368 F.2d at 798.

■■ Although Jones was in custody when interrogated and voluntarily divulged as much information as could be gleaned from filling out the registration form, the same principles motivating a reversal of the conviction in that case dictate a like result in this case. Agent Kane and Inspector Circione were cognizant of the defendant's name, his destination, and where he was coming from. Moreover, at the very least they had reasonable grounds to believe that he was the same Ernest Sansone who had a previous narcotics conviction.[4] The fact

---

4. The Government argues that it was not known whether the defendant was a United States citizen. This contention

has little force in light of the fact that the defendant was required to show proof of birth and citizenship to gain entry to

that the agents in *Jones* were provided with the information by the defendant himself, whereas here the agents were cognizant of the relevant information by virtue of their own devices, does not negate the fact that a key purpose of the statute was fulfilled. That purpose, as expressed by the Ninth Circuit in Reyes v. United States, 258 F.2d 774, 785 (1958), "is to reduce and control the amount of illegal narcotics crossing the border by checking carefully the person and possessions of those most likely to be importing the drugs." The close observation of the defendant by Agent Kane and the careful though fruitless search of his luggage by Inspector Circione indicate that the objectives of the statute had been met.

Irrespective of whether the factors relied upon by the district judge as quoted above are true, they are insufficient standing alone to sustain the conviction. Although the defendant may have known that "it was illegal" to enter Canada without registering, that incident does not demonstrate that the defendant was aware of the fact that there was any registration requirement at all upon reentry into the United States.[5] Nor does that incident prove that the defendant was aware of the fact that he could register on reentry after having failed to register on departure. The fact that warning signs were posted in the customs area of the airport is of little significance due to the defendant's eye affliction which rendered him unable to read even average-sized print.

There was no evidence in the record that the defendant's conduct in the customs area of the airport was in any way suspicious or that he was attemping to hide anything. A thorough search of his luggage was conducted. In addition, at the time the defendant attempted to enter Canada, he freely disclosed his prior narcotics conviction to the Canadian immigration officer before presenting his United States Customs registration form. Finally, the defendant was a man of advanced age and poor health.

In light of these circumstances, it is unreasonable to suppose that the defendant would have been willing to risk a prison term of up to three years and a fine of $1,000 if he had been aware of his duty to register upon his return to the United States. Since the customs officials at the airport had reasonable grounds to believe that the defendant was under a duty to register, they should have so informed him and supplied him with the prescribed customs form. No valid purpose was served by their failure to do so. The only consequence which followed from their conduct was an undesirable one, the leading of a person into committing a violation of the law.

We conclude that the failure of the customs officials to supply defendant with a form as required by 19 C.F.R. § 23.9a vitiates his conviction for not registering upon his return to the United States. United States v. Jones, supra. Both the reasoning of the *Jones* case and the spirit of the regulation [6] indicate that

Mexico. It would have been easy for the agents on duty in the customs area of the airport to have ascertained the citizenship of the defendant, if they had any real doubt about it.

5. 18 U.S.C. § 1407 was enacted some twelve years after the defendant finished serving his sentence for narcotics law violation.

6. After the instant case was decided in the distfict court, 19 C.F.R. § 23.9a was revised on August 3, 1967. Pertinent provisions of both the preamble accompanying the revision and the revision itself read as follows:

[T]o make it clear that customs officers are required to furnish, without request, a copy of customs Form 3231 only to such persons as they have reason to believe or suspect are narcotic drug addicts or narcotic or marihuana laws violators, § 23.9a of the Customs Regulations is amended to read as follows:
§ 23.9a  Narcotic addicts and violators; border crossing.
\*      \*      \*      \*      \*
Customs officers who have reason to believe or suspect that a person returning to the United States is addicted to narcotic drugs or is a narcotic or marihuana laws violator, shall

the customs agents should have supplied the defendant with a form.

Because we have decided that the failure of the customs agents both to inform the defendant of his duty to register and to supply him with a form requires a reversal, we find it unnecessary to pass upon the defendant's contentions that 18 U.S.C. § 1407 is unconstitutional in that it fails to require knowledge or intent and that it limits unreasonably the right to travel. We likewise find it unnecessary to consider the defendant's further contention that when one registers upon returning to the United States in those situations when he failed to register on departure, his privilege against self-incrimination is violated.

The judgment is reversed.

request such person to surrender a registration certificate. If such person for any reason cannot present the certificate the customs officer shall provide him with a copy of the registration certificate (customs Form 3231) and instruct him that he is obligated to complete the form and surrender it to the district director of customs or be in violation of law.

The wording of the new regulation leads quite reasonably to the assumption that the policy expressed therein with respect to supplying forms to those not requesting them had previously been the unwritten position of the Commissioner of Customs.