**UNITED STATES of America, Plaintiff–Appellee,**

v.

**F.J. VOLLMER & COMPANY, INC., and Kenneth L. Nevius, Defendants–Appellants.**

Nos. 92–2713, 92–2322.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1993.

Decided July 30, 1993.

1512

Frances C. Hulin, Asst. U.S. Atty. (argued), Danville, IL, for U.S. in No. 92–2322.

Tom Schanzle–Haskins (argued), Nathan P. Maddox, Giffin, Winning, Cohen & Bodewes, Springfield, IL, for Kenneth L. Nevius.

Frances C. Hulin, Asst. U.S. Atty. (argued), Danville, IL, Rodger A. Heaton, Asst. U.S. Atty. (argued), Springfield, IL, for U.S. in No. 92–2713.

Steven F. Molo (argued), Bruce R. Braun, Winston & Strawn, Chicago, IL, Rex L. Reu, Bloomington, IL, for F.J. Vollmer & Co.

Before CUMMINGS and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In this direct criminal appeal, the corporate defendant and individual defendant challenge their convictions for conspiracy to defraud the United States and for mail fraud. The individual defendant also appeals his conviction for false statement. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and reverse and remand in part.

## I.

### A.

F.J. Vollmer & Company ("F.J. Vollmer") holds a federal firearms license, and eighty percent of its business is buying and selling firearms. Kenneth L. Nevius ("Nevius"), a Captain on full-time active duty in the Illinois National Guard, and F.J. Vollmer were charged by indictment[1] with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 (Count 1), and mail fraud in violation of 18 U.S.C. § 1341 (Counts 14, 15, 16, 17 and 18). Nevius was also charged with making a false statement in violation of 18 U.S.C. § 1001 (Count 5).[2] All of the charges arose from the defendants' participation in the purchase and resale of Steyr AUG–SA rifles from Gun South, Inc. ("GSI"), a firearms importer.

Nevius entered a conditional plea of guilty to Counts 1, 5, and 18, reserving the right to appeal the district court's denial of his motion to dismiss the indictment. Following a jury trial, Robert Vollmer was acquitted of all counts against him. F.J. Vollmer was acquitted of two counts of mail fraud, but found guilty of three counts of mail fraud and one count of conspiracy. F.J. Vollmer filed motions for judgment of acquittal or, in the alternative, for a new trial. The district court denied these motions. 792 F.Supp. 616.

### B.

The Secretary of the Treasury, Nicholas Brady, acting through the Bureau of Alcohol,

---

1. The original indictment was filed on November 6, 1991. R. 1. A superseding indictment was filed on December 4, 1991. R. 17. For purposes of this opinion, we refer to the superseding indictment simply as the "indictment."

2. The defendants were also charged in other counts in the indictment, but those counts are not at issue in this appeal. The other counts that charged Nevius with federal crimes were dismissed pursuant to a plea agreement, and F.J. Vollmer was acquitted of the other charges against it. The indictment also charged Robert W. Vollmer, a corporate agent of F.J. Vollmer, with conspiracy and mail fraud. However, the jury acquitted him of all counts, and this appeal raises no issue with regard to him.

Tobacco and Firearms ("BATF"), imposed a temporary ban on the importation of various semi-automatic rifles, including the Steyr AUG–SA. At that time, GSI held valid BATF permits for the importation of Steyr AUG–SA rifles and had already remitted payment to the manufacturer for over 1,000 rifles. When the Steyr AUG–SA rifles arrived in the United States, however, they were seized by the United States Customs Service.

GSI filed suit against the Secretary of the Treasury in the Northern District of Alabama, seeking to enjoin the government from interfering with the delivery of the firearms. The district court granted the injunctions. *Gun South, Inc. v. Brady*, 711 F.Supp. 1054 (N.D.Ala.1989). On appeal, the United States Court of Appeals for the Eleventh Circuit reversed the district court's order, finding that BATF was acting within its authority in imposing the temporary import ban. *Gun South, Inc. v. Brady*, 877 F.2d 858 (11th Cir.1989).

Following the Eleventh Circuit's decision, the import ban on Steyr AUG–SA rifles became permanent. The ban bars private parties from importing Steyr AUG–SA rifles. Government agencies such as the National Guard remain free to import the rifles for their official use. 18 U.S.C. § 925(a)(1). Once a government agency lawfully imports a firearm under section 925(a)(1), the agency is not required to retain the firearm for any specific period of time, and the agency remains free to resell it to third parties.

On remand from the Eleventh Circuit, GSI and BATF entered into a voluntary settlement agreement pursuant to Fed.R.Civ.P. 41(a)(1)(ii). This agreement was reduced to a "Stipulation and Order" entered by the Alabama district court. Under the terms of the agreement, GSI took possession of the rifles and agreed to sell the firearms only to law enforcement officers or agencies after it obtained advanced written permission from BATF for each sale. To obtain that approval, each prospective purchaser had to submit a purchase order certifying that the rifle would be used in the officer's official duties and that the rifle was not being purchased for purposes of transfer or resale. A super-visory official also had to certify that the law enforcement officer could use the rifle in connection with his or her official duties and that the agency's policies allowed officers to carry and use personally owned firearms.

### C.

In the summer of 1990, Nevius saw a GSI advertisement in the *Shotgun News*, offering Steyr AUG–SA rifles for sale to law enforcement personnel at a price of $1,380. He also saw F.J. Vollmer's advertisement, which stated that it would pay $2,200 for new Steyr AUG–SA rifles. Nevius then contacted GSI and confirmed that as a military officer he was eligible to purchase a Steyr AUG–SA rifle.

Nevius obtained an information packet from GSI setting forth formats for the various documents required to accompany a purchase order. Nevius prepared the necessary correspondence on his National Guard unit's stationery to purchase two Steyr AUG–SA rifles, including a signed statement that the firearms were being purchased in connection with his official duties and not for the purpose of resale. He then obtained the required supervisory certification from a superior officer and ordered the rifles using funds from his savings account. Upon receiving the rifles, Nevius took them to F.J. Vollmer and sold them.

A few weeks later, Nevius put together a second transaction, again for two rifles. Nevius asked Sergeant James McCabe, one of his subordinates, to sign the necessary purchase order. Nevius signed the supervisory certification himself and again withdrew money from his savings account to finance the purchase.

Several months later, Nevius arranged another purchase, this time for eight rifles. Because there was a limit of two rifles per purchaser, Nevius approached four subordinates to sign the purchase orders. All four agreed and signed statements that the firearms were being purchased in connection with their official duties and not for resale. In exchange for their signatures, Nevius agreed to pay each of them either $100 or $200. (Tr. 345). To finance the transaction,

Nevius borrowed money from the First National Bank of Taylorville, using an automobile as collateral.

Over the next seven months, Nevius put together the documentation for five more transactions, following the same format. In all, Nevius acquired a total of 60 Steyr AUG–SA assault rifles and 11 Steyr AUG–SA rifle components known as special receivers. The receivers were classified as assault rifles and were also subject to the ban. All the assault rifles and receivers, save one Steyr AUG–SA rifle that Nevius retained for his personal collection, were delivered to F.J. Vollmer.

In the final transaction, Nevius ordered fourteen rifles. After Nevius picked up the packages at the United Parcel Service ("UPS") office, he was approached by BATF agents. The agents questioned him first at the UPS office and then at his home. They seized the rifles and receivers just delivered as well as the Steyr AUG–SA rifle from Nevius' personal collection.

Two days later, a BATF agent came to Nevius' home, and Nevius agreed to cooperate with BATF. While the agent was with him at his home, Nevius called Robert Vollmer and made arrangements to deliver the fourteen rifles and seven receivers. Both the telephone conversation and the subsequent delivery were recorded by BATF agents. This delivery took place during regular business hours and the tape recording reflects conversation between Nevius and F.J. Vollmer employees about the possibility of "getting into trouble".

Nevius and F.J. Vollmer both filed motions to dismiss the indictment (R. 29, 32), which the district court denied. Nevius then entered a conditional plea of guilty to Count 1 (conspiracy), Count 5 (false statement) and Count 18 (mail fraud) under which Nevius reserved the right to appeal the denial of his motion to dismiss the indictment.

The jury acquitted Robert Vollmer, the only agent of F.J. Vollmer prosecuted, of all six counts against him and acquitted the corporation of the mail fraud counts arising from two of the transactions. F.J. Vollmer was found guilty of mail fraud on three counts and of conspiracy to defraud the Unit-

ed States. Following the return of the verdicts, the court did not immediately accept them, and counsel for F.J. Vollmer requested that the jury be polled. However, after an exchange regarding a motion for acquittal, the district court dismissed the jury without polling it.

On appeal, F.J. Vollmer raises seven issues, the first three of which Nevius adopts. F.J. Vollmer argues: (1) that the district court erred in imposing criminal liability solely on the basis of a civil settlement agreement; (2) that the BATF exceeded its authority when it entered the settlement agreement; (3) that the convictions are based on a *de facto* agency rule that was not promulgated in compliance with the Administrative Procedures Act (APA); (4) that the government failed to allege or prove that the conspiracy interfered with a lawful government function; (5) that the government failed to allege or prove that the mail fraud deprived the government of a property right; (6) that the district court deprived F.J. Vollmer of its Sixth Amendment right to a unanimous verdict by failing to poll the jury; and (7) that the district court erred in excluding evidence under Federal Rule of Evidence 608(b). In addition, Nevius argues that his conviction must be reversed because the indictment was insufficient as a matter of law to allege conspiracy to defraud the United States, mail fraud and false statement. We affirm in part, reverse in part, and reverse and remand in part.

## II.

█ We may easily dispose of the arguments that the convictions are based on the violation of a settlement agreement and that the convictions are based on rules promulgated in violation of the APA. F.J. Vollmer and Nevius were not convicted of violating a settlement agreement. They were both charged with and convicted of violating 18 U.S.C. §§ 371 and 1341, which prohibit conspiring to defraud the United States or an agency thereof and mail fraud. In addition, Nevius was charged with and convicted of making a false statement in violation of 18 U.S.C. § 1001. The indictment and jury instructions specifically stated the elements of

these federal crimes. At no time did the government allege or argue that F.J. Vollmer and Nevius should be convicted for violating a settlement agreement. Further, because the convictions are not based on the violation of the settlement agreement, the defendants' argument that the settlement agreement constitutes an improperly promulgated *de facto* substantive agency rule is irrelevant. Accordingly, we need not consider whether the settlement agreement was promulgated in accordance with the Administrative Procedures Act (APA), 5 U.S.C. § 551 *et seq.* Thus, we consider the next argument; whether BATF had authority to regulate the transfer of an assault rifle from GSI to Nevius.

■ This is apparently a question of first impression in this circuit, and we conclude that the BATF's exercise of authority was properly within its purview. F.J. Vollmer and Nevius argue that Congress has given BATF no authority to regulate domestic sales of firearms. They conclude that the rifles were imported ónce GSI took possession of them; thus, the settlement agreement regulates the domestic sale of firearms. Under this argument, therefore, both the settlement agreement and BATF's limitations on the sales of Steyr AUG–SA rifles by GSI exceed the authority granted BATF by Congress. Although the defendants' argument seems persuasive on its face, we agree with other courts that have considered the issue that BATF's authority extends to the first domestic sale of a firearm imported for government use.

The importation of firearms into the United States is governed by §§ 922 and 925 of the Gun Control Act of 1968, 18 U.S.C. §§ 921–929.[3] Section 922(*l*) broadly prohibits the importation of all firearms into the United States except as provided in § 925(d).[4] However, federal, state or local agencies may import firearms pursuant to § 925(a)(1) which provides that the prohibition of § 922(*l*):

> shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any state or any department, agency or political subdivision thereof.

18 U.S.C. § 925(a)(1). We conclude that this language grants BATF authority to regulate the transfer of a firearm from an importer to the law enforcement agency for which the firearm was imported. For purposes of this opinion, we refer to this as a "first sale."

■ A common maxim of statutory construction is that statutes are to be construed so as to give meaning to every word in them. *Indianapolis Power and Light Co. v. Interstate Commerce Comm'n.*, 687 F.2d 1098, 1101 (7th Cir.1982). Further, as the Third Circuit so aptly noted, "[w]e agree to all the generalities about not supplying criminal laws with what they omit, but there is no canon against using common sense in construing laws as saying what they obviously mean." *United States v. Lanni*, 466 F.2d 1102, 1109 (3rd Cir.1972). In order for § 925(a)(1) to have meaning, some authority must exist to ensure that the exception to § 922(*l*) is employed only by governments or their agencies. Thus, BATF must have the authority to require truthful statements about the purpose for the purchase of weapons. As we cannot impute to Congress the intent to allow firearms purchasers to lie, we conclude that BATF has the authority to regulate "first sales" pursuant to § 925(a)(1).

This conclusion is supported by the importation regulations set forth at 27 C.F.R. § 178. All importations of firearms into the United States must be approved by the Director of BATF. 27 C.F.R. § 178.112. Furthermore, firearms may be imported for a

---

3. Control over the importation of firearms vests in the Secretary of the Treasury, who has delegated the authority to the Director of BATF. *See* Treasury Department Order No. 120–01 (formerly No. 221), 37 Fed.Reg. 11,696 (June 10, 1972), and 27 C.F.R. § 178.112.

4. Section 925(d)(3) permits importation of firearms that are particularly suitable for or readily adaptable to sporting purposes. Prior to March 14, 1989, Steyr AUG–SA rifles were importable pursuant to this exception. After this date, the Director of BATF declared that Steyr AUG–SA rifles were no longer considered suitable for sporting purposes.

governmental department or agency and "may be released from Customs custody upon a showing that the firearm ... is being imported or brought into the United States by or for such a governmental entity." 27 C.F.R. § 178.115(b). Likewise, the BATF notes in ATF Ruling 80–8 that "[§ 925(a)(1) ] was not intended and may not be used as a vehicle by which unimportable firearms can be introduced into ordinary commercial channels in the United States." 1980–2 ALCOHOL, TOBACCO and FIREARMS QUARTERLY BULLETIN 20. These regulations indicate that BATF relies upon truthful statements when allowing importation for a governmental entity or agency. Finally, we note that other courts support our conclusion that BATF has the authority to ensure that firearms imported for governmental agencies are truly used for official purposes. *See United States v. Goodman,* 639 F.Supp. 802 (M.D.Pa.1986); *United States v. Mastro,* 570 F.Supp. 1388 (E.D.Pa. 1983).

■ F.J. Vollmer and Nevius contend that our determination that BATF has authority to regulate first sales does not end our inquiry regarding the proper scope of BATF's authority. They contend that GSI did not import the Steyr AUG–SA rifles pursuant to § 925(a)(1); it imported them pursuant to a voluntary settlement agreement. They argue that the Secretary of Treasury had no authority to circumvent the normal procedures for importing firearms. *Century Arms, Inc. v. Kennedy,* 323 F.Supp. 1002, 1011 (D.Vt.1971) (district court held that by barring importation of the firearms, the Secretary was "refusing to grant an exemption *which he had no authority to grant.*") (emphasis added). This leads the defendants to conclude that the settlement agreement, because it allowed importation of firearms in a manner outside the normal procedures, is illegal and of no effect. Since BATF thus acted outside its authority to regulate the sale, defendants argue that their convictions should be reversed.

The government points out that regulations promulgated under 18 U.S.C. § 926 allow alternate methods for gaining BATF approval for the importation of firearms under § 925.

The Director may approve an alternate method or procedure, subject to stated conditions, when it is found that:

(1) Good cause is shown for the use of an alternate method or procedure;

(2) The alternate method or procedure is within the purpose of, and consistent with the effect intended by, the specifically prescribed method or procedure and that the alternate method or procedure is substantially equivalent to that specifically prescribed method or procedure; and

(3) The alternate method or procedure will not be contrary to any provision of law and will not result in an increase in cost to the Government or hinder the effective administration of [this import regulation].

27 C.F.R. § 178.22.

F.J. Vollmer in its reply brief then argues that BATF did not follow this alternate procedure. It concludes that because BATF did not follow its own procedure, the settlement agreement is illegal and of no effect.[5] Even if it were appropriate for us to do so, we could not decide this issue because we do not have a record before us to make this determination. This narrow issue was not discussed in the motions to dismiss the indictment, nor was it brought up before the district court by either party. It is clear from the Stipulation and Order entered pursuant to the settlement agreement (R. 29, Ex. 2) that BATF believed that it was acting within its authority under § 925(a)(1) in entering the settlement agreement, and it believed that this statutory provision controlled these sales. F.J. Vollmer did not contend that BATF was acting outside its own regulations for alternate procedures until this appeal. We will not, therefore, decide this question, and we conclude that for purposes of this

5. *See, United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974); *Vitarelli v. Seaton,* 359 U.S. 535, 545, 79 S.Ct. 968, 975, 3 L.Ed.2d 1012 (1959); *Frisby v. United States Dept. of Housing & Urban Dev.,* 755 F.2d 1052, 1055 (3rd Cir.1985); *Kelly v. Railroad Retirement Board,* 625 F.2d 486, 492 (3rd Cir. 1980); *United States v. Jones,* 368 F.2d 795 (2nd Cir.1966).

case, BATF was acting within its legislative grant of authority.

## III.

█ Nevius entered a conditional plea of guilty, reserving the right to appeal the denial of his motion to dismiss the indictment. He alleges that the indictment is insufficient to charge conspiracy to defraud the United States, mail fraud, and false statement. He argues that the conspiracy conviction must be reversed because the indictment failed to allege that the conspiracy interfered with a lawful government function as required by *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966). He next argues that the mail fraud count failed to allege that the scheme to defraud deprived the government of a property right as required by *McNally v. United States*, 483 U.S. 350, 360, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987). Finally, Nevius argues that the indictment was insufficient to charge false statement because the statements did not pertain to a matter "within the jurisdiction" of the Bureau of Alcohol, Tobacco & Firearms. An indictment is sufficient if it: (1) states all the elements of the offense charged; (2) informs the defendant of the nature of the charge, enabling the defendant to prepare a defense; and (3) enables the defendant to plead the judgment as a bar to later prosecution for the same offense. *United States v. James*, 923 F.2d 1261, 1265 (7th Cir.1991) (citing cases).

█ We address Nevius' claim with regard to the false statement charges first. Nevius contends that the statements did not pertain to a matter "within the jurisdiction" of the Bureau of Alcohol, Tobacco & Firearms. The false statement statute, 18 U.S.C. § 1001, imposes penalties on one who makes a statement that was false, was material, was made knowingly and willfully and was made in a matter within the jurisdiction of any department or agency of the United States.

The issue of jurisdiction in the context of a violation of § 1001 is a question of law, and a department or agency has jurisdiction only when it has the power to exercise authority in a particular situation. *United States v. Rodgers*, 466 U.S. 475, 479, 104 S.Ct. 1942, 1946, 80 L.Ed.2d 492 (1984).

Nevius argues that BATF lacked the power to regulate the sales of Steyr AUG–SA rifles from GSI to Nevius because BATF does not have the authority to regulate domestic sales of firearms. However, we resolved this issue in our earlier discussion, when we concluded that BATF was acting within its proper jurisdiction in regulating "first sales". Therefore, Nevius' conviction for false statement is affirmed.

Federal Rule of Criminal Procedure 12(b)(2) requires that a defendant must raise any objection to the indictment prior to trial. Without objection, the "indictment should 'be upheld unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted.'" *James*, 923 F.2d at 1266 (quoting *United States v. Gironda*, 758 F.2d 1201, 1210 (7th Cir.), *cert. denied*, 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985)).

█ Nevius objected to the sufficiency of the indictment to charge conspiracy and mail fraud, but he did not do so on all the grounds alleged here. In his motion to the district court, he argued that the indictment was insufficient because BATF acted without authority and because the settlement agreement between BATF and GSI was a rule promulgated in violation of the APA. He did not argue that the indictment was insufficient on the basis of *Dennis* or *McNally*.[6] Therefore, we will reverse as to Nevius only if the indictment is so defective that no reasonable construction charges conspiracy to defraud or mail fraud.

---

**6.** The closest that Nevius came to arguing that the indictment was insufficient on the grounds of *Dennis* and *McNally* was at page 12 of his motion to dismiss. There he argued that a prosecution for conspiracy to defraud the government would lie only if the purpose of the conspiracy was to defeat the lawful function of the government. However, instead of arguing that the indictment was legally insufficient because it did not allege interference with a lawful government function, Nevius argued that the BATF was not acting lawfully in regulating the weapons in this case. R. 29 at 12.

F.J. Vollmer did object to the indictment on the basis of *Dennis* and *McNally*. Therefore, we will uphold the indictment with regard to F.J. Vollmer if it stated the elements, informed F.J. Vollmer of the nature of the charge and enabled F.J. Vollmer to plead the judgment as a bar to later prosecution. *James*, 923 F.2d at 1265. Also, because F.J. Vollmer's conviction rests upon a jury verdict, F.J. Vollmer challenges both the sufficiency of the indictment and the sufficiency of the evidence on the conspiracy count and the mail fraud counts. When considering a sufficiency of the evidence challenge, we "review all the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government.... We will overturn a verdict only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." *United States v. Durrive*, 902 F.2d 1221, 1223 (7th Cir.1990) (quotations and citations omitted).

■ Keeping in mind the standards set forth above, we first consider whether the indictment was sufficient to allege a conspiracy to defraud the United States. The defendants were charged under 18 U.S.C. § 371, which is a broad criminal statute that prohibits conspiracies to "defraud the United States, or any agency thereof in any manner or for any purpose." The Supreme Court has held that the conspiracy to defraud element of 18 U.S.C. § 371 encompasses only conspiracies in which the defendants intended either to cause the government property or pecuniary loss or interfere with or obstruct a lawful government function. *Hammerschmidt v. United States*, 265 U.S. 182, 185, 44 S.Ct. 511, 511, 68 L.Ed. 968 (1924); *Dennis v. United States*, 384 U.S. 855, 861, 86 S.Ct. 1840, 1844, 16 L.Ed.2d 973 (1966). It is conceded that the government did not pursue conspiracy convictions on the basis of property or pecuniary loss. Therefore, the conspiracy convictions can stand only if the conspiracy interfered with a lawful government function.

The defendants argue first that BATF was not performing a legitimate government function. As we discussed fully earlier in this opinion, BATF was acting within its authority in regulating the first sale by GSI. Therefore, we move on to the defendants' second argument; which is that the indictment did not state and the government did not prove interference with a lawful government function. We conclude after reviewing the indictment and the record as a whole that the government alleged and proved interference with a lawful government function.

In *Dennis*, the defendants, officers of the International Union of Mine, Mill and Smelter Workers, were prosecuted for conspiring to fraudulently obtain the services of the National Labor Relations Board (NLRB) on behalf of a union by filing false non-Communist affidavits. On review, the Supreme Court considered whether the indictment was sufficient to state the offense of conspiracy to defraud the United States. The defendants argued that on the basis of *Hammerschmidt v. United States*, 265 U.S. 182, 44 S.Ct. 511, 68 L.Ed. 968 (1924), the indictment was insufficient because it did not allege interference with a lawful government function. The basis for this argument was that the NLRB was required to certify any union whose officers filed non-Communist affidavits without regard to the veracity of the affidavits. The Court decided that if the indictment reflects the essence of the alleged offense, the indictment will be upheld. The Court stated:

> The facts are, according to the indictment, that petitioners and their co-conspirators could not have obtained the Board's services and facilities without filing non-Communist affidavits; that the affidavits were submitted as part of a scheme to induce the Board to act; that the Board acted in reliance upon the fact that affidavits were filed; and that these affidavits were false. Within the meaning of § 371, this was a conspiracy to defraud the United States or an agency thereof.

*Dennis*, 384 U.S. at 862, 86 S.Ct. at 1844.

In *United States v. Haga*, 821 F.2d 1036, 1041 (5th Cir.1987), the Fifth Circuit noted that it is "not altogether clear whether a 'conspiracy to defraud' indictment must specifically allege that the conspiracy had as its object interfering with a particular, specific governmental function...." Fortunately,

we need not decide this difficult question because the indictment at issue in this case included language expressly naming the governmental agency. The indictment indicated that the conspiracy actively interfered with the agency's specific function in a definite manner by contravening the normal requirements for the procurement of Steyr AUG–SA rifles. In Count I, the indictment alleged that:

> Beginning about June 1990 and continuing through September 1991, in the Central District of Illinois, Kenneth L. Nevius, F.J. Vollmer and Company, Inc., Robert W. Vollmer, James B. McCabe and other persons known to the grand jury conspired together and with each other to defraud the United States of America *and the Bureau of Alcohol, Tobacco and Firearms (ATF) by providing false and fraudulent documents* to the Bureau of Alcohol, Tobacco and Firearms for the purpose of obtaining Steyr AUG–SA assault rifles *in contravention of the requirements for sale of such weapons* and for the purpose of resale in general commerce.

Indictment, R. 17 at 3. As long as the indictment charges a conspiracy "showing ... more than inadvertent contact with a governmental agency or incidental infringement of government regulations," it is sufficient to charge the essence of the criminal offense. *Haga*, 821 F.2d at 1041. That test is met in this case. The indictment stated that false documents were given to BATF in contravention of the normal requirement. The indictment also made clear that BATF would not release the weapons unless it received certification that the weapons were not being purchased for purposes of resale. Further, the indictment stated that GSI could not sell the weapons without BATF's express written permission. The facts as stated in the indictment accordingly indicate more than inadvertent contact with a government agency and more than incidental infringement of that agency's function. Therefore, we hold that the indictment was sufficient as a matter of law to charge a conspiracy to defraud the United States.

F.J. Vollmer also challenges the sufficiency of the evidence on the basis that the government did not prove that the conspiracy interfered with a lawful government function. We affirm on this issue as well. Carmen Lewis, chief of the firearm and explosive imports branch of BATF, testified that BATF would not approve these sales without the proper certification, and that BATF relied on the veracity of the certifications in approving the sales of Steyr AUG–SA assault rifles by GSI. (Tr. 259–70). Furthermore, the jury was instructed that the government had to prove beyond a reasonable doubt each element alleged in the indictment. Therefore, the jury must have concluded that the government proved beyond a reasonable doubt that F.J. Vollmer conspired to provide false and fraudulent statements to BATF in contravention of the requirements for purchasing Steyr AUG–SA assault rifles. The evidence shows interference with a lawful government function and was sufficient for the jury to find guilt beyond a reasonable doubt.

■ Nevius and F.J. Vollmer argue that the indictment was also insufficient to charge mail fraud because it did not allege that the government had a property interest in the guns as is required by *McNally v. United States*, 483 U.S. 350, 360, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987). On the same basis, F.J. Vollmer argues further that even if the indictment was sufficient, the evidence was insufficient to prove guilt beyond a reasonable doubt of mail fraud.

*McNally* requires that the government allege and prove as an element of the offense of mail fraud that the defendant deprived the victim of a property right. *Id.* at 359–61, 107 S.Ct. at 2881–82. This principle holds true when the government is the victim of the alleged scheme to defraud because "any benefit which the Government derives from the [mail fraud] statute must be limited to the Government's interests as property holder". *McNally*, 483 U.S. at 358–59 n. 8, 107 S.Ct. at 2880–81 n. 8.

In this case, the government did not allege in the indictment, present evidence at trial, nor was the jury instructed on the deprivation of a property right. On appeal, the government argues that it held a joint ownership interest in the Steyr AUG–SA rifles

with GSI. The government argues that its right to control the disposition of the firearms is a property interest and that it was deprived of this interest by Nevius' and F.J. Vollmer's mail fraud. This argument fails.

It is well established that the government's regulatory interests are not protected by the mail fraud statute. *United States v. Bruchhausen*, 977 F.2d 464 (9th Cir.1992); *United States v. Schwartz*, 924 F.2d 410 (2nd Cir. 1991) (government's interest in issuing licenses is regulatory and licenses are not property for purposes of *McNally*); *United States v. Granberry*, 908 F.2d 278, 280 (8th Cir.1990) (government has no property interest in licenses and permits); *Toulabi v. United States*, 875 F.2d 122, 125 (7th Cir.1989) (government has no property interest in licenses); *United States v. Dadanian*, 856 F.2d 1391, 1392 (9th Cir.1988) (same); *United States v. Evans*, 844 F.2d 36, (2nd Cir. 1988) (government's interest in regulation of foreign resales of firearms is regulatory interest, not property interest); *United States v. Murphy*, 836 F.2d 248, 251 (6th Cir.1988), *cert. denied*, 488 U.S. 924, 109 S.Ct. 307, 102 L.Ed.2d 325 (1988) (government has no property interest in licenses and certifications). In *Bruchhausen*, the alleged victims were manufacturers of military equipment and technology. They sold technology to Bruchhausen on his representation that it would remain in the United States, when in fact, Bruchhausen was selling the technology to Soviet bloc countries. The government argued that the manufacturer's interest in controlling the ultimate disposition of its property was a property interest for purposes of the statute. The Ninth Circuit held that this interest could not be characterized as a property interest for purposes of the wire fraud statute. *Bruchhausen*, 977 F.2d at 468.

The property interest alleged here is quite similar to that alleged in *Bruchhausen*, and we conclude that the government's interest in the Steyr AUG–SA rifles is not one that can be characterized as a property interest for purposes of *McNally*. In *Bruchhausen*, the manufacturer's interest in property it no longer owned was not a sufficient property interest for purposes of convicting for mail or wire fraud. In this case, the government contends that its interest in property it *never owned* is a property interest because it has a degree of "control" over the disposition of that property. BATF "controls" the importation of all firearms to a certain extent because firearms cannot be imported without a license from BATF. 18 U.S.C. § 922. However, one would hardly say that BATF therefore has a property interest in all firearms imported into the United States. BATF's right to control the disposition of the Steyr AUG–SA rifles derives from its legislative grant of authority. Thus, BATF has a regulatory interest in the disposition of firearms, but its legislative grant of authority conveys no property interest. The indictment is insufficient, and it does not by any reasonable construction charge mail fraud. Therefore, despite Nevius' failure to object on these grounds specifically, we reverse his conviction for mail fraud. Likewise, we reverse F.J. Vollmer's mail fraud convictions because the indictment was insufficient and because the government's evidence was also insufficient to prove a property interest.

## IV.

Finally, F.J. Vollmer argues that certain trial errors also merit reversal of its conviction. The corporation urges that the district court erred when it refused to admit testimony from Nevius' banker that Nevius told him his loans were for business equipment. Furthermore, F.J. Vollmer argues that the district court did not poll the jury as requested and therefore, the conviction must be reversed and remanded for a new trial.

First, we consider the evidentiary question. Decisions regarding the admission of evidence are left to the district court's discretion, and we will reverse a ruling on the admissibility of evidence only upon an abuse of that discretion. *United States v. Allen*, 930 F.2d 1270, 1273 (7th Cir.1991). Here, the district court determined that the defendants could not question Tom Bolfing, the loan officer at Nevius' bank, about the reason Nevius gave for needing the loans. Nevius had said during his testimony that no one asked for the purpose of the loans, and that he did not know why the loan applications stated that the purpose of the loans was

for business equipment. The district court reasoned that for purposes of Federal Rule of Evidence 608(b), this was extrinsic evidence of a specific instance of bad conduct designed to attack the credibility of Nevius.[7] Therefore the district court did not allow the testimony.

On appeal, F.J. Vollmer contends that this evidence was material and relevant to the corporation's guilt because it showed that Nevius went to the bank for loans instead of borrowing the money from the corporation. It argues that this evidence tends to prove that F.J. Vollmer did not enter into an agreement with Nevius and that Nevius was acting independently.

The district court's ruling was not an abuse of discretion. F.J. Vollmer was permitted to question Nevius regarding his statements to Bolfing about the purposes for the loans. Further, F.J. Vollmer was permitted to ask questions of Bolfing regarding the loans themselves. F.J. Vollmer made its point before the jury because Nevius testified that he did not ask F.J. Vollmer for an advance but rather went to the bank for a loan. During closing arguments counsel for F.J. Vollmer argued that this showed Nevius was acting independently. Because it had already made its point, the only other purpose F.J. Vollmer could have had for this evidence would have been to attack Nevius' credibility. Therefore, FRE 608(b) applies, and the evidence was properly excluded as a specific instance of misconduct offered to attack credibility.

The second trial error that F.J. Vollmer alleges was that, despite its timely request that the jury be polled, the district court dismissed the jury without polling it. The government urges, however, that F.J. Vollmer waived its right to poll the jury because it did not pursue its motion.

 A defendant has an "absolute right" to poll the jury to ensure the unanimity of the verdict against him. *Mackett v. United States*, 90 F.2d 462, 466 (7th Cir.

1937). Federal Rule of Criminal Procedure 31(d) codifies this right and provides:

> [w]hen a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

The right to poll the jury is a substantial right. *United States v. Randle*, 966 F.2d 1209, 1214 (7th Cir.1992). Failure to poll the jury upon a timely request is "per se error requiring reversal." *Government of Virgin Islands v. Hercules*, 875 F.2d 414, 418 (3rd Cir.1989).

 After the jury returned its verdicts, the district court asked if counsel wanted to be heard. Counsel for F.J. Vollmer asked that the jury be polled and the court inquired why counsel wanted a poll. At sidebar, the district court indicated that it thought the verdict of guilty was defective against F.J. Vollmer because the corporation could not be guilty if the corporate agent was acquitted. Counsel for F.J. Vollmer then moved for a judgment of acquittal or a judgment notwithstanding the verdict. The court reserved ruling on that motion. Immediately after the reservation of ruling, the court dismissed the jury.

The government argues that by making and pursuing a motion for judgment of acquittal without pursuing the jury poll motion, F.J. Vollmer waived its right to poll the jury. The government relies on cases where courts have found waiver when pre-trial motions were not pursued at trial. *United States v. Wilson*, 962 F.2d 621 (7th Cir.1992) (pre-trial motion to suppress evidence); *United States v. Taglia*, 922 F.2d 413, 416 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 2040, 114 L.Ed.2d 125 (1991) (pre-trial motion to sever). However, the government's reliance on these cases is misplaced because the transcript here does not indicate that F.J. Vollmer ever abandoned the motion to poll the jury. It simply requested another motion as well. The district court reserved ruling on

---

7. Federal Rule of Evidence 608(b) provides in relevant part that, "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence."

the motion for acquittal but did nothing with the motion to poll the jury. The very next thing the district court did after reserving ruling was dismiss the jury. The record indicates no opportunity for F.J. Vollmer to pursue its motion. The cases cited by the government involve pre-trial motions which were not renewed at trial. This situation is hardly comparable, and F.J. Vollmer cannot be said to have waived its motion when there was no opportunity to raise the issue again. Because the motion was timely and defendants enjoy an absolute "right to poll the jury ... *unless it has been expressly waived," Mackett v. United States,* 90 F.2d at 465, we must reverse F.J. Vollmer's conviction for conspiracy to defraud the United States and remand for a new trial.

### V.

For the foregoing reasons, Nevius' convictions for conspiracy to defraud the United States and false statement are AFFIRMED. Nevius' and F.J. Vollmer's convictions for mail fraud are REVERSED, and F.J. Vollmer's conviction for conspiracy to defraud the United States is REVERSED and REMANDED for a new trial.