INTERPORT, INC., Plaintiff,

v.

John MAGAW, Director, Bureau of Alcohol, Tobacco, and Firearms,

and

George Weise, Commissioner, U.S. Customs Service, Defendants.

Civil Action No. 95–1175 (SS).

United States District Court, District of Columbia.

April 16, 1996.

Richard Ernest Gardiner, Fairfax, VA, for plaintiff.

Rudolph Contreras, U.S. Attorney's Office, Washington, DC, for John Magaw and George Weise, defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on cross-motions for summary judgment. Plaintiff alleges that the Bureau of Alcohol, Tobacco, and Firearms ("ATF") was arbitrary and capricious, and exceeded its authority, in denying an application to import firearms for sale to local law enforcement agencies where the importer had failed to attach a purchase order form, as required by the ATF.

## BACKGROUND

This case involves a challenge to the legal requirements for importation of firearms into the United States. The relevant statute is found at 26 U.S.C. § 5844, which provides that:

> No firearm shall be imported or brought into the United States or any territory under its control or jurisdiction unless the importer establishes under regulations as may be prescribed by the Secretary, that the firearm to be imported or brought in is—
>
> (1) being imported or brought in for the use of the United States or any department, independent establishment, or agency thereof or any State or possession or any political subdivision thereof; or
>
> (2) being imported or brought in for scientific or research purposes; or
>
> (3) being imported or brought in solely for testing or use as a model by a registered manufacturer or solely for use as a sample by a registered importer or registered dealer;
>
> except that, the Secretary may permit the conditional importation or bringing in of a

firearm for examination and testing in connection with classifying the firearm.

26 U.S.C. § 5844 (1995).

Pursuant to its statutory grant of authority, on August 3, 1971, the ATF adopted a regulation requiring any importer to establish "to the satisfaction of the Director" that the firearm is being imported for one of three permissible purposes: (1) for use by a governmental entity, (2) for scientific or research purposes, or (3) for use as a sample. 27 C.F.R. § 179.111(a) (1992). The regulation also requires any person desiring to import a firearm into the United States to file with the Director an application, referred to as Form 6, executed under penalty of perjury. *Id.* The application must include a "detailed explanation of why the importation of the firearms falls within the standards" set out by the regulation. *Id.*

Although not expressly mandated by the regulation, the ATF over the past approximately 16 years has in practice required that all applications to import firearms for sale to government entities be accompanied by a purchase order from the government entity. This purchase order requirement is found in ATF Ruling 80–8 which holds that "a licensee's application to import surplus military firearms ... for law enforcement officers will not be approved unless accompanied by a purchase order from ... any department, agency or political subdivision of any State." ATF Ruling 80–8, ATF Q.B. 1980–2.

In this case, plaintiff, Interport, Inc. ("Interport"), wishes to import firearms for use by certain local governmental entities. Interport purchased overseas and had shipped 598 foreign-made machine guns to a secure storage facility located in San Francisco, known as Foreign Trade Zone # 3 ("FTZ # 3").[1] Plaintiff intended to store the weapons at FTZ # 3 until it was able lawfully to import the weapons. On June 23, 1994, the U.S. Customs Service (Customs) informed the operator of FTZ # 3 that its high security storage areas were no longer adequate for

---

1. Foreign trade zones are designated sites near U.S. ports of entry where foreign merchandise may be brought and stored, pending actual importation into the United States. 19 U.S.C. §§ 81b–81c. Customs is empowered to ensure that the security of merchandise kept at foreign trade zones is in accordance with applicable Customs security standards and specifications. 19 C.F.R. § 146.3 and § 146.4(e).

the storage of "Title II Weapons." When the operator of FTZ # 3 decided not to upgrade the facility to meet the requirements for storage of weapons such as those owned by plaintiff, Customs informed Interport that it must transfer its weapons to an approved storage facility by October 14, 1994. Failure to do so would cause Customs to treat the weapons as abandoned and it would assume custody of the weapons.

On September 29, 1994, plaintiff submitted a Form 6 application to ATF, requesting approval to import the 598 machine guns stored at FTZ # 3 into the United States. Although plaintiff stated that it intended to sell the weapons to governmental entities, the application did not include a purchase order form. In a letter attached to the application, Interport explained that its request was prompted by its inability to find another suitable storage facility subsequent to the closing of FTZ # 3.[2]

The ATF denied Interport's application via a letter dated January 27, 1995, citing the firearms importation restrictions found in 26 U.S.C. § 5844. On February 18, 1995, Interport submitted a second Form 6 application, asking ATF to reconsider its prior decision. The ATF denied this application on May 19, 1995. In its letter, the ATF stated that in order to meet the exemption which permits the importation of firearms for sale to governmental agencies, plaintiff must attach a purchase order for the sale of the weapons to its Form 6 application.

Customs took custody of Interport's machineguns, notifying Interport that if it did not reclaim the weapons within six months—either by transferring them to an approved FTZ or obtaining appropriate approval to import the weapons—the weapons would be destroyed.

In April or May, 1995, Customs again notified Interport that the weapons would be destroyed if they were detained for more than six months. On June 20, 1995, Customs informed Interport that the weapons had been deemed abandoned as of April 14, 1995, and that the weapons could now be lawfully destroyed. The weapons then were shipped to Fort Benning, Georgia where they were to be destroyed. On June 21, 1995, Interport filed this suit claiming that the actions of the ATF in denying its application were "arbitrary and capricious." Interport filed suit requesting this Court to mandamus the ATF to approve Interport's application to import the machineguns. Pending resolution of the instant litigation, the Government has refrained from destroying the weapons.

## STANDARD OF REVIEW

When reviewing agency actions, this Court must "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law...." 5 U.S.C. § 706(2). This is a deferential standard which requires the Court to grant a presumption of validity to the agency's actions. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America v. United States,* 735 F.2d 1525, 1534 (D.C.Cir.1984). "The 'keystone' of our inquiry is to ensure that the [agency] engaged in reasoned decision making." *Id.,* citing *International Ladies' Garment Workers Union v. Donovan,* 722 F.2d 795, 815 (D.C.Cir.1983). The Court looks, therefore, only for a rational basis to support the ATF's interpretation of the statute in this matter. *Environmental Defense Fund v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981).

## ANALYSIS AND DECISION

The legal question at issue in this case is whether the ATF's purchase order requirement that a purchase order from a governmental purchaser accompany an application for importation of weapons should have been subject to notice and comment. Plaintiff does not, in this matter, quarrel with the statutory or regulatory provisions restricting importation of machine guns.

---

**2.** The Government has identified at least three locations which meet the security requirements for storage of the type of machine guns at issue in this case: one each in Oregon, Alabama and South Carolina. Plaintiff maintains that these sites are not acceptable because travel back and forth between plaintiff's place of business and the storage site would make marketing and selling the guns prohibitively expensive.

Plaintiff's sole objection is based on its claim that the purchase order requirement is a legislative rule rather than an interpretive rule, and therefore must be subject to notice and comment procedures. *See* 5 U.S.C. § 553(b)(3)(A) and § 553(d)(2).

This argument is without merit. The plain language of 27 C.F.R. § 179.111 specifies that the importer must satisfy the Director of the ATF that the firearms are to be imported for a permissible purpose. The purchase order ruling does not modify nor add to this requirement, but merely informs interested parties regarding what will "satisfy" the Director. Accordingly, this ruling is an interpretation or implementation of an existing regulation, which was itself subject to notice and comment and is not under contest in this action.

Interport further argues that, even though 27 C.F.R. § 179.111 requires the importer to satisfy the Director of the ATF that the importer falls within one of the three exceptions, the filing of the proper application should be all that is required by law. Interport has no basis for such an inference.

The ATF has utilized the purchase order requirement since 1980 for the importation of all restricted firearms under the "governmental entities" exception. The purchase order requirement is a reasonable means to ensure compliance with the statutory mandate that weapons be imported only if the importation falls within one of three enumerated exemptions. In view of the potential for fraudulent importation,[3] the ATF must be permitted to require some proof on the part of weapons importers that the purpose for the purchase of the weapons falls within one of the statutory exceptions. The purchase order requirement is a reasonable way to implement the statute and the ATF regulation, and is an appropriate implementation of the statute and rule. Accordingly, the Court

will grant defendants' motion for summary judgment.

■ While the Government had a reasonable basis for taking action under the regulation discussed above, the Government should have exercised a measured, common-sense remedy. The destruction of plaintiff's property, as the Government originally intended, is too severe a remedy in a case such as this. It is uncontested that the plaintiff is a legitimate and licensed weapons importer. While plaintiff must comply with ATF regulations, in this instance plaintiff has been put in a difficult position by virtue of the fact that Customs' determination that FTZ # 3 did not meet standards for secure storage came after plaintiff already had shipped its weapons to FTZ # 3.

Plaintiff is a small business. It has a prior record of proceeding the way it did in this case—namely, purchasing weapons for police departments and holding them at a foreign trade zone until it could find a buyer for them. Up until June 1994, this procedure was acceptable to the Government. It was only when the storage facility was found not to meet appropriate security standards that these problems arose. Certainly under these circumstances, the Government can be more understanding and a little less bureaucratic. After the Court's intervention, a suitable arrangement was made to store plaintiff's merchandise pending appropriate disposition. The parties will be ordered to notify this Court if for some reason the defendants change their position and again intend to destroy the weapons.

When Phillip Howard publishes his sequel to his best-seller book, entitled *The Death of Common Sense,* here is another example of the Government's inability to deal with a problem without the exercise of common sense. Of course, in fairness it must be pointed out that plaintiff has not acted en-

---

**3.** In its brief, the ATF points to a number of cases where importers had fraudulently imported weapons by falsely claiming the weapons would be sold to a governmental entity. *See United States v. F.J. Vollmer & Co., Inc.,* 1 F.3d 1511, 1516–17 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 688, 126 L.Ed.2d 655 (1994) (where a military officer fraudulently purchased rifles from an importer, for resale to a third-party, under the governmental entities exception); *United States v. Goodman,* 639 F.Supp. 802 (M.D.Pa.1986), *aff'd,* 800 F.2d 1140 (3rd Cir.1986), *cert. denied,* 479 U.S. 1035, 107 S.Ct. 887, 93 L.Ed.2d 840 (1987) (where a licensed importer and police officials conspired to import weapons for private sale under the auspices of an official police purchase).

tirely reasonably on its part. Over the course of these proceedings, every time the Court had obtained the Government's willingness to find a suitable solution to the problem, plaintiff insisted upon the Court making a ruling that would have invalidated the Government's appropriate interpretation of the law and allowed the wholesale importation of assault weapons.[4] Perhaps the lesson to be learned and what may be missing from Howard's excellent book is that reasonableness and common sense must be exercised by both governmental and private sectors.

### ORDER

This matter comes before the Court on cross-motions for summary judgment. For the reasons cited in the foregoing opinion, it is hereby **ORDERED** that defendant's motion for summary judgment be **GRANTED**, and plaintiff's motion for summary judgment be **DENIED**. It is further **ORDERED** that the U.S. Customs Service will not destroy the weapons without prior approval by this Court.

---

4. Because, after this Court's intercession, the Government has been willing to accommodate the plaintiff's needs, the Court has been at a loss to understand why plaintiff has insisted on this Court making a ruling on the legality of the Government's interpretation of the purchase order requirement. Plaintiff may well have a hidden agenda. If so, the Court questions the ethics of plaintiff proceeding in this manner.