103 F.3d 131
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Donald David BURTON, Defendant-Appellant.
 No. 95-6420.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1996.
 
 Before: KENNEDY and COLE, Circuit Judges; and ALDRICH, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant Donald D. Burton appeals his conviction and sentence for making false statements while acquiring firearms. We affirm.
 
 I.
 
 2
 In an effort to stem the flow of assault rifles into the United States, the Treasury Department banned certain assault weapons from importation in 1989. The list of banned weapons included the Steyr Mannlicher semi-automatic rifle, also known as the Steyr Aug. Gun South, Inc. (GSI), a licensed firearms importer, reached an agreement with the Bureau of Alcohol, Tobacco, and Firearms (ATF) and obtained consent to sell weapons that had been shipped but not sold prior to the effective date of the ban.[1] Future domestic sales of these weapons were to be made under certain restrictions--sales were to be limited to purchasers who were law enforcement officers or entities, planning to use the weapons in official law enforcement duties and not to resell them. After the purchaser provided the appropriate documentation to GSI, GSI would send the documentation to the ATF in Washington, D.C. in order to obtain approval of the transaction.
 
 
 3
 Donald Burton was employed as a police officer with the city of Lavergne, Tennessee. He was also a licensed gun dealer. Burton purchased six Steyr Mannlicher rifles between March and August 1990, subject to the above conditions, in his own name and in the name of other persons. Burton submitted certification to GSI, in each purchase, that the named purchaser was a law enforcement officer (either himself or Officer Chris Spradling) purchasing the rifle for use in law enforcement and not for the purpose of resale. It would have been illegal for GSI to proceed with the sales absent such certification.
 
 
 4
 Following a tip that he was engaging in a fraudulent scheme to obtain Steyr Aug firearms for resale, ATF agents arranged to meet with Burton. At one or more of these meetings Burton waived his rights, admitted to the conduct, admitted he had intentionally misrepresented facts to GSI, and admitted he knew his actions violated the law. As a consequence, Burton was indicted on June 15, 1994, and charged with four counts of making false statements in violation of 18 U.S.C. § 922(a)(6) and 18 U.S.C. § 2, and four counts of making false, fictitious, and fraudulent statements in violation of 18 U.S.C. § 1001. The testimony at trial established that four of these purchases were "straw" purchases--conducted for the benefit of a third party--accomplished by the submission of false information to GSI regarding the identity and status of the real purchaser and reason for the purchase.[2] Burton was convicted on all eight counts in a jury trial on May 26, 1995. Following his conviction, Burton moved for judgment of acquittal, or in the alternative a new trial, and later filed a supplemental motion for new trial. The district court granted Burton's motion for new trial on all counts charging a violation of 18 U.S.C. § 1001, but denied the motion with respect to the 18 U.S.C. § 922(a)(6) counts. The parties and the court have agreed to stay retrial of those counts pending the outcome of this appeal.
 
 
 5
 On September 7, 1995, Burton was sentenced to a twelve month term of imprisonment. The district court granted Burton's request for a downward departure on the basis of family hardship and permitted the bifurcation of the twelve-month term of imprisonment into a sentence of six months of incarceration and six months of home detention. Burton appeals his conviction.
 
 II.
 
 6
 Burton raises a number of issues on appeal. First, he argues that the district court erred in refusing to grant his motion for judgment of acquittal because his conviction was based upon a civil settlement agreement and not upon the violation of any federal statute. He goes on to argue that the civil settlement agreement executed between ATF and GSI exceeded the statutory authority given to the ATF by Congress, and that the agreement cannot serve as a "de facto" regulation because it was not promulgated in accordance with the Administrative Procedures Act, 5 U.S.C. § 551 et seq. While it is true that GSI and ATF entered into a civil settlement agreement, Burton was not convicted of violating that agreement. Instead, Burton was charged with and convicted of violating 18 U.S.C. § 922(a)(6), which prohibits persons from knowingly making false statements to a licensed firearms importer in connection with the acquisition of a firearm. E.G., United States v. F.J. Vollmer & Co., 1 F.3d 1511, 1516 (7th Cir.1993), cert. denied, 510 U.S. 1043 (1994). Specifically, § 922(a)(6) provides in pertinent part:
 
 
 7
 It shall be unlawful for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer ... knowingly to make any false or fictitious oral or written statement ... intended or likely to deceive such importer ... with respect to any fact material to the lawfulness of the sale or other disposition of such firearm ... under the provisions of this chapter.
 
 
 8
 18 U.S.C. 922(a)(6) (1996).
 
 
 9
 The government never asserted that Burton should be convicted of violating the civil settlement agreement. Rather than alleging a violation of the civil settlement agreement, the government produced evidence at trial illustrating that Burton had "knowingly" made false statements to GSI in connection with the acquisition of a number of firearms in violation of § 922(a)(6). Because his conviction was based on a violation of § 922(a)(6) and not a violation of the civil settlement agreement entered into between ATF and GSI, Burton's claim that the agreement exceeds the statutory authority granted by Congress to ATF is moot. E.g., F.J. Vollmer & Co., 1 F.3d at 1516. Consequently, we refrain from considering whether the civil settlement agreement was promulgated in accordance with the Administrative Procedures Act.
 
 
 10
 We next address appellant's contention that the evidence was not sufficient to support his conviction. When reviewing a challenge to a jury verdict raising a claim of insufficient evidence, the appropriate inquiry is whether the relevant evidence viewed in the light most favorable to the government could be accepted by a reasonably minded jury as adequate and sufficient to support the conclusion of defendant's guilt beyond a reasonable doubt. United States v. Anderson, 76 F.3d 685, 688 (6th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 91 (1996).
 
 
 11
 The crux of the charges against Burton is that he knowingly made a false statement in connection with the acquisition of firearms from a licensed firearms importer. The evidence adduced at trial showed Burton admittedly concocted and participated in a scheme to obtain firearms by submitting false information to GSI. On at least several documented occasions, Burton certified to GSI that the firearms would be used for law enforcement purposes even though his intention was to purchase the firearms for profitable resale. Burton also enlisted or attempted to enlist other police officers in his scheme. Burton contends, somewhat disingenuously, that he did not view his actions as illegal. Appellant's subjective beliefs notwithstanding, it has long been the law in this circuit that a violation of § 922(a)(6) is a general--not specific--intent crime. United States v. Lawrence, 680 F.2d 1126, 1128 (6th Cir.1982); United States v. Cornett, 484 F.2d 1365, 1368 (6th Cir.1983). "Section 922(a)(6) does not require a showing that appellant knowingly violated the law; it simply requires proof that appellant knowingly made a false statement. The crucial question for the jury was whether appellant understood the facts, not the law. No specific intent is required." Cornett, 484 F.2d at 1368 (citations and internal quotations omitted). Therefore, we conclude that the evidence in the present case, viewed in the light most favorable to the prosecution, demonstrates that a rational trier of fact could have found Burton guilty of violating § 922(a)(6).
 
 
 12
 Finally, we address appellant's arguments regarding the validity of the jury instructions. Burton first contends that the trial court committed reversible error in refusing to submit his proffered jury instruction. A district court's decision to grant or deny a party's requested jury instruction falls within that court's discretion. United States v. Frost, 914 F.2d 756, 766 (6th Cir.1990). This court reviews matters within the discretion of the district court for an abuse of discretion. Id. at 764. "When judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." Id. (quoting McBee v. Bomar, 296 F.2d 235, 237 (6th Cir.1961)).
 
 
 13
 The requested jury instruction set forth appellant's argument that the jury was required to render a not-guilty verdict if it found he had a good faith belief that his actions were within the boundaries of the law. This instruction, however, incorrectly states the applicable law. As we have already outlined, the violation of § 922(a)(6) is a general intent crime. See Cornett, 484 F.2d at 1368. Burton admitted that he knowingly made false statements to GSI. This level of intent suffices under the statute; specific intent need not be shown. Lawrence, 680 F.2d at 1128. The crucial question for the jury was whether appellant understood the facts, not the law. Cornett, 484 F.2d at 1368. Thus, the district court did not abuse its discretion in refusing to submit appellant's jury instruction.
 
 
 14
 Burton's second claim regarding the jury instructions relates to the charges filed pursuant to 18 U.S.C. § 1001. At the conclusion of the lower court proceedings, the district court granted Burton's motion for a new trial with respect to all counts charging a violation of 18 U.S.C. § 1001, based upon the United States Supreme Court's subsequent resolution of United States v. Gaudin, --- U.S. ----, 115 S.Ct. 2310 (1995). In Gaudin, the Supreme Court held that when materiality is an element of an offense, the Constitution gives the defendant a right to have that element submitted to the jury. Id. at 2320. Because the district court excluded the element of materiality as a jury issue from the § 1001 jury instruction and hence gave an erroneous instruction, Burton contends the erroneous § 1001 instruction could have impermissibly tainted the § 922(a)(6) instruction, and a new trial should have been granted as to all counts.
 
 
 15
 Burton has failed to proffer any support for this argument. During the reading of the instructions, the district court unequivocally stated that Burton was charged with two crimes, each of which carried multiple counts. The district court also provided the substance of the statutes under which Burton was charged, separately defining the elements of each crime. The almost invariable assumption of law is that jurors follow their instructions. Richardson v. Marsh, 481 U.S. 200, 206 (1987); United States v. Wright, 16 F.3d 1429, 1443 (6th Cir.) (presumption exists that jury follows the instructions presented), cert. denied, 512 U.S. 1243, 114 S.Ct. 2759 (1994). Because appellant proffers no evidence that the jury behaved to the contrary, nor that the erroneous instruction as to the § 1001 counts affected the jury's resolution of the § 922(a)(6) counts, we reject this argument as well.
 
 III.
 
 16
 For the reasons given above, we AFFIRM the district court's judgment and sentence.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 GSI had ordered the semi-automatic rifles from Steyr Mannlicher prior to the ban, and the weapons were in route to GSI--on a water carrier--when the Treasury Department imposed the ban. GSI brought suit against ATF claiming economic hardship and an agreement was reached, sanctioned by the courts, whereby GSI would be permitted to take receipt of these weapons
 
 
 [2]
 The purchases in question are summarized below:
 (1) In early 1990, Burton approached Ernest Moore, a licensed gun dealer but not a law enforcement officer, with an offer to obtain a Steyr Mannlicher. Moore agreed and paid for the weapon. Burton delivered the rifle to Moore on the same day he received it from GSI in May 1990. Moore recorded the rifle as if it had been sent directly to him from GSI, even though Burton had received the firearm and certified to GSI that he was buying the firearm for himself. (2) In October 1990, Burton submitted a purchase order for another Steyr Mannlicher in the name of Officer Chris Spradling, certifying that Spradling was acquiring the firearm for use in his official duties. Burton paid for the firearm, immediately took possession of it when it arrived from GSI, converted it into a fully automatic firearm, and sold it three days later. Officer Spradling never possessed the firearm. (3) In September 1991, Burton approached John Arnold, a licensed firearms dealer, and offered to order a Steyr Mannlicher firearm, which Arnold knew to be restricted to law enforcement, in exchange for a loan of one thousand dollars. Arnold agreed and provided the funds for the purchase as well the loan. Burton obtained this firearm from GSI by providing false documents that stated he was the purchaser and the weapon was to be used for law enforcement purposes. The firearm was eventually delivered to Arnold. (4) In August 1992, Arnold ordered and paid for another Steyr Mannlicher from Burton. Burton submitted the certification for the firearm, and again falsely claimed Officer Spradling was the purchaser. Burton authorized the purchase by signing as Officer Spradling's supervisor. GSI shipped the firearm to Burton who delivered it to Arnold. Upon delivery, Burton instructed Arnold to log the firearm in Arnold's records as a transfer from Officer Spradling because the gun had been ordered in that name.