GOVERNMENT OF THE
VIRGIN ISLANDS

v.

HERCULES, Von, Appellant.

No. 88–3501.

United States Court of Appeals,
Third Circuit.

Argued April 25, 1989.
Decided May 31, 1989.

James R. Holloway (argued), Melody M. Walcott, Asst. Federal Public Defender, Christiansted, St. Croix, U.S. V.I., for appellant.

Terry M. Halpern, U.S. Atty., David L. Atkinson (argued), Asst. U.S. Atty., Dist. of the Virgin Islands, Christiansted, St. Croix, U.S. V.I., for appellee.

Before HUTCHINSON, COWEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

COWEN, Circuit Judge.

This appeal arises from a judgment of conviction entered by the District Court for the Virgin Islands against appellant, Von Hercules ("Hercules"). Hercules was found guilty of robbery, grand and petit larceny, assault, and carrying or using a dangerous weapon. Because we find that the district court abused its discretion in not properly polling the jury, we will reverse his conviction.

### I.

Appellant, Hercules, was arrested on May 4, 1988. He was charged with the following: two counts of robbery in the first degree in violation of 14 V.I.C. §§ 1862(2) and 11; two counts of robbery in the second degree in violation of 14 V.I.C. § 1863(1); two counts of assault in the first degree in violation of 14 V.I.C. §§ 295(3) and 11; two counts of assault in the third degree in violation of 14 V.I.C. §§ 297(2) and 11; two counts of carrying or using a dangerous weapon in violation of 14 V.I.C. §§ 2251(2) and 11; and two counts of grand larceny in violation on 14 V.I.C. §§ 1083 and 11.[1] At his arraignment, Hercules pleaded Not Guilty. He demanded a jury trial which began and ended on June 27, 1988.

The testimony at trial indicates that on February 25, 1988, at approximately 12:30 a.m., Henry Benjamin, the security guard on duty at the Holger Danske Hotel in Christiansted, St. Croix, observed a black male individual bending over in the parking lot. Reporter's Transcript ("R.T.") at 38. Benjamin walked towards the individual and requested that he stand up. The individual stood up wielding a knife and his face was covered with a nylon mask. Benjamin then saw another masked individual, also a black man armed with what appeared to be a sawed-off shotgun. R.T. at 44, app. at 34.

Benjamin was relieved of his wallet containing $300.00 in cash by the knife-wielding man. R.T. at 45. Benjamin's hands and feet were then bound. Both masked men, after obtaining Benjamin's keys, gained entry into the Hotel office and confronted Claudia Walker, the night auditor. Walker testified that after she was made to face the wall, the masked men removed $100.00 in cash from a desk drawer and several items from Walker's bag including a wallet, credit cards, two pieces of jewelry consisting of an ankle chain and a link chain, both of which were broken, and a cassette tape. R.T. at 76, 78.

Benjamin testified that he recognized one of the masked individuals and identified

---

1. One count of grand larceny was reduced to petit larceny (14 V.I.C. § 1084). Hercules was ultimately convicted on all counts.

him as "Hercules." R.T. at 33.[2] He also had picked Hercules out of a photographic line-up on April 19, 1988. App. at 10. Walker, however, testified that she was not able to identify the men. R.T. at 76.

■ Officer McFarland next testified that he searched the defendant's room pursuant to a search warrant obtained May 12, 1988 and found the two broken chains in Hercules' pocket of his suede jacket. R.T. at 94.[3] The record indicates that four broken gold chains were found in the pocket of Hercules' grey suede jacket by the searching officer. App. at 101. The chains had previously been admitted into evidence and identified by Walker as the broken chains which had been in her purse. R.T. at 82. Defense counsel did not object at trial to the introduction of this evidence.[4]

At the conclusion of the case, the jury announced a verdict of guilty. Defense counsel then requested that the jury be polled. R.T. at 220. The record indicates that at this point, the following exchanges occurred:

THE FOREMAN: I think, in order to save time, I should say that we have decided on guilty for—on all counts, one through twelve.

THE COURT: One through twelve?

THE FOREMAN: Yes.

THE COURT: Have you dated each verdict form?

THE FOREMAN: Yes, we have.

THE COURT: Each of you have signed all twelve of them?

THE FOREMAN: Yes.

THE COURT: Thanks Mr. Foreman and thanks for your time in this case. It may be that you are on the case for Wednesday. So, I will see you that day. If not, when I come back to St. Croix next month.

ATTORNEY WALCOTT: Excuse me, Your Honor. Could we have the Jury polled?

THE COURT: You will—you may take a look at the signatures.

As I was saying, thanks a lot and you may all be excused.

THE FOREMAN: I have given that to Mr. Fragosa.

(Thereupon the Jury was excused at 5:08 P.M.).

THE COURT: I do not have Jurors polled by asking, is that your verdict. When all twelve sign it, you may examine the verdict.

I understand the defendant is already in custody on some other matters. Very well, the defendant is remanded to custody, awaiting sentencing which will take place.

R.T. at 220–21.

Hercules received a sentence of four years on all Counts except the petit larceny

---

**2.** Benjamin testified that he had been acquainted with Hercules when Hercules was also employed by Holger Danske Hotel. R.T. at 36. Hercules was dismissed from his employment there after approximately six weeks. R.T. at 37.

**3.** Officer McFarland testified that the search warrant was executed before he received a description of the chains. R.T. at 102. After the execution of the warrant, he went to Walker and got a description of the chains from her. He then presented the chains to her on that same day. *Id. See also,* Appellant's Reply Brief at 3.

Walker originally testified that she thought she had described this jewelry to the investigating police on the night of the robbery. R.T. at 79. However, she admitted on crossexamination, upon being shown her statement to the police, that she had not described the chains to the police. R.T. at 87, 160. Apparently she had mentioned—without actually describing—a gold

chain which had been taken from her during the robbery. *See* Affidavit of Officer Kenneth A. Edwards, app. at 9.

**4.** During a pretrial conference, however, defense counsel did object to the search and seizure of the gold chains on the grounds that the warrant failed to mention them. R.T. at 3, 4. The judge denied defense counsel's request to suppress the chains.

The government argues on this appeal that the admission of the two chains into evidence was proper under the "plain view" exception to the warrant requirement and, alternatively, that because the defendant failed to object to the introduction of the evidence at trial, the admission of the chains was not "plain error."

On the present record, where the search warrant incorporated the information (which referred to Ms. Walker's jewelry) and the affidavit of Sergeant Edwards, we are satisfied that the district court did not err in its ruling denying suppression.

count for which he received a sentence of one year. His sentences are being served concurrently. Von Hercules now appeals to this Court from his Judgment and Commitment Order dated July 20, 1988. We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291.

## II.

On appeal, Hercules challenges the district court's "method of polling the jury," arguing that the district court committed reversible error when it refused counsel's request to poll the jury and stating, instead, that the signatures of the jurors on the verdict forms would suffice.[5]

Under somewhat different circumstances, e.g., when a juror dissents during a poll, we have noted that a district judge's actions regarding polling are subject to an abuse of discretion standard. *See United States v. Fiorilla*, 850 F.2d 172 (3d Cir.) (trial judge did not abuse his discretion in ordering deliberations to continue after a juror voiced dissent during a poll), *cert. denied*, —— U.S. ——, 109 S.Ct. 492, 102 L.Ed.2d 529 (1988); *United States v. Aimone*, 715 F.2d 822, 832 (3d Cir.1983) (the choice of whether to discharge the jury or to order further deliberations after an aborted poll is a matter within the discretion of the trial judge), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3585, 82 L.Ed.2d 883 (1984). Although we have never addressed the issue, we also acknowledge and accept the prevailing view that the *method* of polling the jury is also within the discretion of the trial judge. *See United States v. O'Bryant*, 775 F.2d 1528, 1535 (11th Cir. 1985) ("the form of jury polling is a matter entrusted to the sound discretion of the trial judge"); *United States v. Mangieri*, 694 F.2d 1270, 1282 (D.C.Cir.1982) ("[t]he trial court has substantial discretion to decide how the jury should be polled"); *United States v. Shepherd*, 576 F.2d 719, 722 n. 1 (7th Cir.) ("[t]he manner in which a poll is

to be conducted] is a matter left to the discretion of the trial judge"), *cert. denied* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 155 (1978); *see also* 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 5.24 at 169 (1977) ("[t]he form the poll takes, so long as it is designed to elicit the agreement or dissent of each juror to the verdict, is within the discretion of the trial court"). We, therefore, review the trial judge's actions for an abuse of discretion.

## III. DISCUSSION

█ When the jury retired for deliberations, it was given separate verdict forms for each of the twelve counts. Each juror signed his or her name to each of the twelve verdict forms. When the verdict was returned in open court, the forms contained one hundred forty-four (144) signatures. When asked if the jury could be polled, the trial court merely invited Hercules' counsel to examine the signatures. Hercules argues on appeal that his conviction must be reversed because signed verdict forms do not constitute a legally acceptable form of polling. He maintains that a jury cannot be said to have reached a valid verdict until the result is announced in open court and no dissent is registered by any juror. We agree.

"The right to poll the jury is one of long standing in both the federal ... and most state courts." *Jaca Hernandez v. Delgado*, 375 F.2d 584, 585 (5th Cir.1967). However, the right to poll the jury is not of constitutional dimension. *See United States v. Beldin*, 737 F.2d 450 (5th Cir. 1984) ("[t]he right to poll the jury derives not from the Constitution, but from rule 31(d)"), *cert. denied*, 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984); *United States v. Shepherd*, 576 F.2d at 724 ("[w]hile of ancient origin ... the right [to poll the jury] is not of constitutional dimensions"); *Jaca Hernandez v. Delgado*, 375

**5.** The government contends that "[w]hat Appellant is actually complaining of is not the absence of a jury poll but the method employed in the jury poll. Brief for Appellee at 25. Hercules argues that the signed verdict forms cannot constitute a form of polling the jury. *See* Appel-

lant's Reply Brief at 4. Because both a refusal to poll and a judge's abuse of discretion in his manner of polling lead to the same result, i.e., reversal of the conviction, we choose not to become embroiled in a battle of semantics.

F.2d at 585–86. Instead, the right is derived from Rule 31(d) of the Federal Rules of Criminal Procedure which provides for a poll of the jury at the request of any party or upon the court's own motion.[6]

Rule 31(d), however, does not prescribe the manner in which the poll is to be conducted. This, we have noted, is a matter left to the discretion of the trial judge. *See United States v. Shepherd*, 576 F.2d at 722 n. 1; *Shibley v. United States*, 237 F.2d 327, 334 (9th Cir.), *cert. denied*, 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 77 (1956). In determining whether the trial judge abused his discretion in using the signed forms which were made available to defense counsel upon requesting the poll, it is prudent to first consider the purpose of having a jury polled.

With regard to the purpose underlying the polling of juries, this Court has stated that:

> The object of a jury poll is 'to give each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict which the foreman has returned and thus to enable the court and the parties to ascertain with certainty that a unanimous verdict has in fact been recorded and that *no juror has been coerced or induced to agree to a verdict to which he has not fully assented.*

*United States v. Grosso*, 358 F.2d 154, 160 (3d Cir.1966), *rev'd on other grounds*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) quoting *Miranda v. United States*, 255 F.2d 9, 16–17 (1st Cir.1958) (emphasis in original). Likewise, most courts which have examined the rationale underlying Rule 31 agree that the primary purpose of a poll "is to test the uncoerced unanimity of the verdict by requiring 'each juror to answer for himself, thus creating individual responsibility, *eliminating any uncertainty* as to the verdict announced by the foreman.' " *United States v. Shepherd*, 576 F.2d at 725 quoting *United States v. Mathis*, 535 F.2d 1303, 1307 (D.C.Cir.1976) (emphasis in original).

It is generally acknowledged that the right of jurors to dissent from a verdict to which they have previously assented in the juryroom is a concomitant part of testing the "uncoerced unanimity of the verdict." *See United States v. Nelson*, 692 F.2d 83, 84 (9th Cir.1982) ("[a]lthough their jury room votes form the basis of the announced verdict, the jurors remain free to dissent from the announced verdict when polled"); *United States v. Morris*, 612 F.2d 483, 489 n. 11 (10th Cir.1979) ("[u]nder the Rule as at common law a juror is clearly entitled to change his mind about a verdict he had agreed to in the jury room"); *United States v. Sexton*, 456 F.2d 961, 966 (5th Cir.1972) (same). *Compare United States v. Shepherd*, 576 F.2d at 725 ("[t]he purpose of affording a right to have the jury polled is not to invite each juror to reconsider his decision, but to permit an inquiry as to whether the verdict is in truth unanimous").

Thus, it is clear that despite the fact that jurors are instructed to vote only for a verdict with which they conscientiously agree, Rule 31 implicitly recognizes the influences which may be exerted on individual jurors to acquiesce in the majority vote. Consequently, the only way to effect the Rule's goal of assuring uncoerced unanimity is to have the jury polled *after* the return of the verdict but before it is recorded. *See United States v. Love*, 597 F.2d 81, 84 (6th Cir.1972). Even though the trial judge's "method of polling" the jury may have had the virtue of ensuring that no mistakes occurred in counting the votes, this simultaneous method, whereby the signed verdict slips themselves are said to constitute the poll, precludes any juror from dissenting from his previously assented-to verdict. *See Green v. Zant*, 738 F.2d

---

**6.** The Rule states as follows:

> (d) Poll of the Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

Fed.R.Crim.P. 31(d).

In the case before us, we note that defense counsel made a timely request to have a poll. R.T. at 220.

1529 (11th Cir.1984) ("[t]he object of a poll of the jury is to ascertain that the verdict agreed upon in the jury room is *still* the unanimous verdict of the jury") (citation omitted) (emphasis added), *cert. denied*, 469 U.S. 1143, 105 S.Ct. 827, 83 L.Ed.2d 819 (1985). Under the facts contained in the record before us, this "jury poll" cannot possibly reveal the effects of any undue coercion—a task which it is, in part, designed to accomplish.

An inevitable conclusion to be drawn from the discussion of Rule 31's underlying rationale is that "a verdict is not final when announced." *United States v. Love*, 597 F.2d at 84.[7] Rather, "[t]he test for validity of the verdict is whether it 'was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict.'" *United States v. Morris*, 612 F.2d at 490 quoting *Cook v. United States*, 379 F.2d 966, 968 (5th Cir. 1967); *see also United States v. Lee*, 532 F.2d 911, 913 (3d Cir.1976) ("[i]n a federal criminal trial, a verdict must be unqualified and unambiguous" and "[i]t must represent the unanimous vote of the jurors"). In the absence of a valid poll upon a timely request, we must regard the verdict as defective.

While we are reluctant to prescribe a precise method of polling the jury, we find that the mere reliance on verdict slips signed in the juryroom is inadequate.[8] Jurors must be given an opportunity in open court to express their agreement or disagreement with the verdict. *See United States v. Grosso*, 358 F.2d at 160.

Because we hold that a violation of Rule 31(d) is *per se* error requiring reversal of Hercules' conviction, the government's argument that harmless error analysis precludes reversal of the conviction, is irrelevant.

Consequently, on the record before us, we must reverse the conviction. While reversal may be a harsh result, nothing short of reversal suffices to remedy this Rule 31 violation.

## IV. CONCLUSION

Based on the foregoing, we conclude that the type of signed jury poll contained within the verdict forms with respect to each separate count does not meet the minimum requirements of sufficiency under our interpretation of Rule 31. We find, therefore, that the trial judge abused his discretion and will reverse the conviction.

---

7. In *United States v. Love*, 597 F.2d at 84, the Court of Appeals for the Sixth Circuit stated that:

> [T]he very existence of Rule 31(d) which provides for polling a jury after its verdict has been returned but before it is recorded compels the conclusion that a verdict is not final when announced. This conclusion is also implicit in opinions which have explained the purpose of permitting juries to be polled.

8. We are troubled by the trial judge's statement that, "I do not have jurors polled by asking, is that your verdict." R.T. at 221. We note that this refusal is inconsistent with the ABA's recommendation contained in section 5.5 of the ABA Standards Relating to Trial by Jury (Approved Draft, 1968) which provide:

5.5 Polling the jury.

> When a verdict has been returned and before the jury has dispersed, the jury shall be polled at the request of any party or upon the court's own motion. The poll shall be conducted by the court or clerk of court asking each juror individually whether the verdict announced is his verdict. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged.

> The Seventh Circuit Court of Appeals has endorsed the ABA guideline in *United States v. Shepherd*, 576 F.2d at 722 n. 1. We also agree that this method is the most desirable.