[No. A069004. First Dist., Div. Four. Jan. 19, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT ARTHUR MASAJO, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.B.

**COUNSEL**

Elaine Profant-Turner, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ANDERSON, P. J.**—Robert Arthur Masajo (appellant) was convicted by a jury of one count of petty theft with a prior—a violation of Penal Code[1] section 666.[2] Appellant was sentenced to the midterm of two years for the conviction; however, the sentence was suspended, and appellant was placed on formal probation.

Appellant advances two challenges to the proceedings below. He first argues that the trial court erred in failing properly to poll the jury, following a defense request, and that such error is reversible per se. He then argues that the trial court erred in restricting his cross-examination of Ronald Durham, one of the principal witnesses against him. We agree that the trial court failed to properly poll the jury but find the error harmless. We find no error in the trial court's ruling pertaining to cross-examination of Durham. Accordingly, we affirm.

### I. TRIAL

#### A. *The Prosecution Case*

The prosecution called three witnesses to establish that appellant stole several books from the Humboldt State University bookstore on January 27, 1994. The first was Durham, who was general manager of the store on January 27. At roughly 10 a.m. that day, Durham observed a man he later identified as appellant in the store with a large stack of books.[3] The two made eye contact for three to five seconds. Durham then observed appellant enter the computer area of the store and stand next to a woman with a small child. Durham next saw appellant as he went out the door without paying for the books. Durham followed him out the door, saying, "Excuse me," as he closed in on appellant. When Durham got very close, appellant took off running, eventually dropping the books.

Four days after the theft, Durham went to a baseball card shop in Arcata and saw appellant working there. Durham reported that fact to Humboldt State University Police Officer Thomas Babcock. Under cross-examination, Durham indicated that he went to the card shop based on a tip from a friend who told Durham that "the person you might be looking for might be working there." Durham later picked appellant out of a photo lineup.

---

[1]Unless otherwise noted, all further statutory references are to the Penal Code.

[2]Before trial, appellant admitted the prior conviction. The court then ordered all evidence of the prior excluded, absent a demonstration of relevance under Evidence Code section 1101, subdivision (b).

[3]Under cross-examination, Durham admitted that he originally described the thief to the police as Asian with a bowl-type haircut. Appellant is not Asian.

Deborah Rosebrook testified that she and her young nephew were in the bookstore on the morning of January 27. While in the computer section, she saw someone standing very close to her. She later identified appellant as being that individual, when she saw his picture in a photo lineup. Under cross-examination, Rosebrook also indicated that she initially described the man she saw in the store as an Asian with a bowl-type haircut. She further admitted that her photo identification of appellant was not "100 percent positive" and that several years earlier she had erred in picking an individual who had cashed a bad check in her store from a photo lineup.

Officer Babcock testified that he interviewed appellant in his card shop in Arcata on February 2, 1994. In that interview, appellant first denied being on campus on the date of the theft. He also denied being on campus for some weeks prior to the interview. However, later in the interview, appellant said that it was "possible" he was on campus on the day of the theft, but he had no specific recollection of his whereabouts at the time the theft was committed.

### B.  *The Defense Case*

The defense first recalled Officer Babcock, who confirmed that the initial dispatch he received on January 27 indicated that the perpetrator was Asian. The defense then called Tanya Coleman, a student at Humboldt State and a friend of appellant. Coleman testified that appellant arrived at her home on January 27 at 9:45 a.m., and that they spent roughly one-half hour there before walking to appellant's card shop so that she could buy some cards. She recalled the day specifically because appellant had "explained" to her his being accused of the bookstore theft roughly two weeks after the incident. Coleman thought January 27 was a Monday because she remembered that "it was early in the week." (January 27, 1994, was, in fact, a Thursday.)

Appellant testified in his own behalf. He stated that he was with Coleman at the time of the theft. On cross-examination, he admitted that he had no records of the cards he sold to Coleman on January 27.

## II.  ANALYSIS

### A.  *The Trial Court's Error in Failing to Poll Each Juror Individually Was Harmless*

Section 1163 provides: "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case

they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation."

In the case at bench, after the verdict had been read by the clerk, the following exchange occurred: "[¶] The Court: Do the counsel desire the jury polled? [¶] Mr. Connell [defense counsel]: Yes, please. [¶] The Court: Ladies and gentlemen, each of you that voted for the specific verdict, in other words, guilty, would you raise your hand. [¶] Okay. Counsel stipulate everybody has their hand up? [¶] Mr. Connell: Well, I don't think this is the proper poll. I think they're supposed to be asked individually. [¶] The Court: Are you willing to stipulate, Counsel, that they have their hands up. [¶] Mr. Connell: I'm willing to stipulate they have their hands up. [¶] Ms. Tunison-Campbell [prosecutor]: People would stipulate, also. [¶] The court: All right. [¶] Madam clerk, will you record the verdict . . . ."

■ The trial court's failure to ask each juror if the verdict was his or hers is error. Section 1163 requires that, once the court initiates a poll at the request of a party, the jurors *"must* be *severally* asked"* if the verdict is theirs.[4] (§ 1163, italics added.) The first question we must address is whether, as argued by appellant, that error is reversible per se.

Appellant's argument is based principally on two federal decisions—*U.S. v. F. J. Vollmer & Co., Inc.* (7th Cir. 1993) 1 F.3d 1511 and *Government of the Virgin Islands* v. *Hercules* (3d Cir. 1989) 875 F.2d 414. In *Hercules*, the trial court permitted the defendant, following a request for a poll, to review the jurors' signatures on the 12 verdict forms but refused to ask each juror, individually, if the verdict was his or hers. The Third Circuit determined that that procedure did not satisfy the requirements of Federal Rules of Criminal Procedure,[5] rule 31(d),[6] and that such failure constituted *"per se* error requiring reversal."* (*Government of the Virgin Islands* v. *Hercules, supra,* at pp. 418-419.) In *Vollmer*, the Seventh Circuit followed *Hercules* without elaboration in stating that the failure to conduct a poll[7] constitutes per se error. (*U.S.* v. *F. J. Vollmer & Co., Inc., supra,* 1 F.3d at pp. 1522-1523.) The question we must consider is whether we must or should follow *Hercules*.

---

[4]The question of whether or not the *initiation* of a poll is mandatory under section 1163, once a request is made, is not before us. Here, the trial court initiated the poll but failed to conduct it properly.

[5]All further references to "Rule" are to the Federal Rules of Criminal Procedure.

[6]Rule 31(d) provides: "Poll of the Jury. When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations or may be discharged."

[7]In *Vollmer*, the request for a poll was coupled with a motion for judgment of acquittal or for judgment notwithstanding the verdict. The trial court reserved a ruling on the motion and dismissed the jury before testing the unanimity of the verdict in any fashion. (*U.S.* v. *F. J. Vollmer & Co., Inc., supra,* 1 F.3d at p. 1522.)

We first note that the rule enunciated in *Hercules* was entirely one of statutory (Rule) interpretation. The Third Circuit specifically noted that "the right [to a poll] is derived from Rule 31(d) . . . which provides for a poll of the jury at the request of any party . . . ." (*Government of the Virgin Islands v. Hercules, supra,* 875 F.2d at p. 418, fn. omitted.) Put another way, the *Hercules* court was interpreting a *federal* rule—not section 1163.

We next note that, even under federal law, the right to poll the jury is *not* of *constitutional* dimensions. (*United States* v. *Shepherd* (7th Cir. 1978) 576 F.2d 719, 724.) Given that fact, we are hard pressed to determine how or why the *Hercules* court concluded that the failure to conduct a proper poll under rule 31(d) requires reversal per se. Unfortunately, the *Hercules* opinion is silent regarding the reasoning or analysis which led the court to that conclusion.

We do agree with *Shepherd* that a failure to poll does not constitute an error of federal constitutional dimension. We also note that no provision of the California Constitution speaks to a right to have a jury polled. As such, we see no rationale for reversing per se for failure to comply with section 1163.

In our view, the appropriate test to be applied is found in section 1404: "Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right." Put another way, the trial court's failure to ask each juror if the verdict was his or hers requires reversal *only* if appellant were prejudiced by that error.[8] We fail to see such prejudice here.

We first observe that the record is completely devoid of any indication that the verdict was not unanimous or that any juror was coerced into voting for conviction. Indeed, the verdict was reached in 72 minutes (including the time required to elect a foreperson.) Such swift deliberation is indicative of unanimity of opinion—not lengthy coercion of a holdout juror.

More importantly, we note that each juror was given an opportunity in open court—free from any potential coercion by other venirepersons—to indicate, by not raising his or her hand when asked to do so by the court, that the verdict was not his or hers. In sum, every available fact leads to the conclusion that the verdict was, indeed, unanimous. As such, we fail to see

---

[8]We assume without deciding that the right to a poll is a "substantial" one, as that term is employed in section 1404.

any prejudice to appellant stemming from the trial court's failure to poll each juror individually.

### B. *The Trial Court Did Not Err in Its Ruling Pertaining to Cross-examination of Durham**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Reardon, J., and Hanlon, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 18, 1996. Mosk, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1335.