Bryan FELIX, Appellant,

v.

## GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.

### No. DC CRIM APP 2001/016, TC CRIM NO. F402/1999.

District Court, Virgin Islands, Appellate Division, D. St. Croix.

Dec. 16, 2002.

Eric S. Chancellor, Esq., St. Croix, for Appellant.

Richard S. Davis, Esq., AAG, Virgin Islands Department of Justice, St. Thomas, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and AUDREY L. THOMAS, Judge of the Territorial Court, Division of ST. THOMAS and ST. JOHN, Sitting by Designation.

OPINION OF THE COURT

PER CURIAM.

Appellant Bryan Felix ("Appellant") is before this Court seeking review of his conviction by a jury of his peers on a three-count information charging Murder in the First Degree, Attempted Murder and the Unauthorized Possession of a Firearm during the Commission of a Crime of Violence. The following issues are before the Court:

1.) Whether the Appellant was deprived of a fair trial because the Government failed to disclose evidence that a criminal investigation was pending against its star witness and that a warrant had been issued as a result of said investigation.

2.) Whether Appellant's attorney rendered ineffective assistance at trial by:

 (a) failing to object to the testimony of the Government's witness who was offered as an expert in the areas of firearms and toolmarks; and/or

 (b) failing to subpoena Kasim Williams [1] to testify at trial.

---

**1.** Kasim Williams was one of the occupants in the car with the Appellant and was present at

3.) Whether the trial court erred in denying Appellant's request to make further inquiry into the Response of Juror No. 8 during the polling of the jurors.

For the reasons stated below, this Court will vacate the Judgment and Commitment entered against Appellant on February 28, 2001 and remand for a new trial in accordance with this opinion.[2]

## I. FACTS AND PROCEDURAL HISTORY

On November 7, 1999, a White Mitsubishi Mirage driven by Leonardo Rodriquez ["Rodriquez"] and carrying two passengers, Jose Mercado and Miguel Crispin ["Crispin"], drove up to Lucy's Food Van in the town of Christiansted. Shortly thereafter, a red Mitsubishi Mirage carrying Bryan Felix ["Appellant"], Leon Isaac ["Isaac"] and Kasim Williams ["Williams"] drove up to the food van. There was a confrontation between Rodriquez and Isaac. Moments later, several gunshots were fired, fatally wounding Crispin and injuring Rodriquez.

Appellant was charged with one count of Murder in the First Degree in violation of V.I. CODE ANN. Tit. 14, § 922(a)(1); one count of Possession of a Firearm during the Commission of a Crime of Violence in violation of V.I. CODE ANN. tit. 14, § 2253(a); and one count of Attempted Murder in violation of V.I. CODE ANN. tit. 14, §§ 922 and 331. (Appendix ["App."] at 2–4.)

A jury trial commenced in this matter on January 16, 2001. At trial, Rodriquez testified for the Government. He identified Appellant as the person who shot him.

The Government also called Carlo J. Rosati ("Rosati"), a firearms and toolmarks identification expert, to testify. Rosati testified that the shots that injured Rodriquez came from the same weapon as the shot that killed Crispin. (App. at 54(82).) Rosati admitted on cross-examination, however, that he did not find any gunshot residue on the Appellant's clothing. (App. at 55(86).) He explained that there may be no residue left on clothing, depending on the way a shooter holds a gun when firing it. (App. at 55(85).) Finally, Rosati further testified that he did not test the gunpowder residue swabbings of Appellant's hands as his office is no longer equipped to conduct such tests. (App. at 54 (82–83).) As Rosati's testimony was somewhat inconclusive, this made Rodriquez the Government's key witness.

On January 18, 2001, Appellant was found guilty on all three counts. On February 28, 2001, Appellant was sentenced to life without probation or parole "or eighty-five (85) years"[3] for Murder in the First Degree; fifteen (15) years for the Attempted Murder; and ten (10) years for the Unauthorized Possession of a Firearm during the Commission of a Crime of Violence to be served concurrently. (App. at 1.) This timely appeal arose out of the February 28, 2001 Judgment and Commitment.

## II. DISCUSSION

### A. JURISDICTION AND STANDARDS OF REVIEW

■ This Court has appellate jurisdiction to review judgments and orders of the

the scene of the crime.

**2.** In making its determination, the Court has given due consideration to the Supplemental Authority and Citation to the Record filed by the Government and the Appellant's response thereto.

**3.** 14 V.I.C. § 923(a) states that the punishment for murder in the first degree is the sentence of life imprisonment without the possibility of parole.

Territorial Court in all criminal cases in which a defendant has been convicted, other than a plea of guilty pursuant to 4 V.I.C. § 33 (1997 & Supp.2002); and Section 23A of the Revised Organic Act of 1954.[4] Findings of fact are subject to a clearly erroneous standard of review. 4 V.I.C. § 33. We exercise plenary review over questions of law. *E.g., Warner v. Government of the Virgin Islands,* 33 V.I. 93 (D.V.I.App.Div.1995). Our review of the effectiveness of counsel's assistance is de novo. *Government of the Virgin Islands v. Weatherwax,* 33 V.I. 399, 499 (3d Cir.1996).

**B. The Government's Failure to Disclose that a Criminal Investigation was Pending against its Key Witness and that an Arrest Warrant had been Issued for Said Witness Did Deprive the Appellant of a Fair Trial.**

■ Appellant argues that he was denied a fair trial as guaranteed under the due process clauses because the Government deliberately failed to disclose the fact that a criminal investigation was pending against Rodriguez and that a warrant had been issued against him.

The Government argues that its failure to disclose the evidence of the pending investigation of Rodriquez and the subsequent issuance of an arrest warrant did not violate the Appellant's right to due process of the law as said evidence could not be used to impeach Rodriquez. The Government also argues that, even if such evidence could be introduced, it would not have affected the outcome of the trial. Finally, the Government argues that, at the time of the trial in this matter, the prosecutors did not know about the pending investigation of Rodriquez and the warrant that was issued as a result of said investigation; therefore, it could not have disclosed this information.

The record shows that, in September of 2000, Rodriquez was identified as the assailant in a crime of first degree robbery that was committed on September 8, 2000. (App. at 20–23.) On January 8, 2001, eight (8) days before the trial in this matter, an arrest warrant was issued for Rodriguez for his commission of the crime of Robbery in the First Degree, in violation of 14 V.I.C. § 1862(2). (App. at 24.) The supporting affidavit stated that on September 19, 2000, four (4) months before the trial in this matter, Rodriquez was identified from a photo array by one of the victims of the robbery as one of the persons who committed the robbery. (App. at 20–23.) Rodriquez was arrested on March 1, 2001. (App. at 25.)

The Supreme Court of the United States has held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In furtherance of the holding in *Brady,* the Supreme Court in *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) found that there is no need for the defendant to request that the evidence be suppressed.

Additionally, the Third Circuit Court of Appeals in *United States v. Perdomo,* 929 F.2d 967, 970 (3d Cir.1991), in interpreting the holding in *Brady,* found that where a defendant challenges a prosecutor's failure

---

4. Revised Organic Act of 1954, § 23A, 48 U.S.C. § 1614, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159–60 (1995) (preceding V.I. CODE ANN. tit. 1).

to disclose evidence, the defendant must establish three elements: (1) the prosecutor must have suppressed or withheld the evidence, (2) the evidence suppressed must be favorable to the defense and (3) the evidence suppressed must be material to the defense.

### 1. The Prosecutor Did Withhold the Evidence about the Pending Investigation against Rodriquez and the Arrest Warrant that was Issued.

The Court finds that the prosecutor in the instant case did withhold the information pertaining to the pending investigation of Rodriquez and the warrant that was issued for his arrest. The *Perdomo* Court found that "a prosecutor's lack of knowledge does not render information unknown for *Brady* purposes ... where the prosecution has not sought out information readily available to it." *Id.* at 970. That court adopted the rational used by the Fifth Circuit in similar cases and stated that " '[i]n the interest of inherent fairness,' the prosecution is obligated to produce certain evidence actually or constructively in its possession or accessible to it." *Id.* (citation omitted).

Furthermore, a prosecutor's claim of the lack of personal knowledge of the information suppressed is not determinative because "[t]he prosecutor's office is an entity and as such it is the spokesman for the Government." *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). In *Giglio,* a previous assistant United States attorney promised the government's key witness that he would not be prosecuted if he cooperated. *Id.* at 150, 92 S.Ct. 763. The *Giglio* Court attributed

that promise to the new assistant United States attorney assigned to the case.

■ In the case, *sub judice,* the government claims that the prosecutor did not know about the pending investigation of Rodriquez and the subsequent warrant that was issued. However, knowledge of the arrest warrant is attributable to the prosecutor in this matter as it is the Attorney General's Office that is responsible for preparing the information necessary for requesting that a warrant be issued.

### 2. The Evidence Withheld by the Prosecutor was Favorable to the Appellant's Case.

■ The Court also finds that the information pertaining to the pending investigation of Rodriquez and the warrant that was issued for his arrest would have been favorable to the Appellant's defense. Evidence that may be used to impeach the testimony of a government witness by attacking said witness' credibility falls within *Brady* when the reliability of that witness may determine a criminal defendant's guilt or innocence. *Giglio,* 405 U.S. at 154, 92 S.Ct. 763. In the case, *sub judice,* the information withheld was favorable to the defense as Rodriguez was the Government's key witness. The information could have been used by the Appellant to discredit the testimony of Rodriguez to show that he testified for the Government because he expected favorable consideration in the robbery case in exchange for his testimony against the Appellant.[5]

### 3. The Evidence Withheld was Material to the Appellant's Case.

Finally, the Court finds that the information pertaining to the pending investiga-

---

5. Under Rule 608(b) of the Federal Rules of Evidence, such information could not be introduced as evidence to show Rodriquez's bad character as the Appellant argues. The only character trait that can be used to impeach the testimony of a witness is the character trait for truthfulness. FED. R. EVID. 608(b).

tion of Rodriquez and the warrant that was issued for his arrest was material to the Appellant's defense. The *Perdomo* Court found that if the prosecutor withholds information after the defendant has made a specific request for relevant material, a new trial is required if "the suppressed evidence might have affected the outcome of the trial." *Perdomo*, 929 F.2d at 971. (citation omitted). "[A] prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." *United States v. Bagley*, 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). A new trial should be granted when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Perdomo*, 929 F.2d at 971. "A reasonable probability is [defined as] a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted).

In the case, *sub judice*, the Appellant argues that the undisclosed information acted as an incentive for Rodriquez to testify against him in hopes of leniency by the Government in his own case. While the Appellant does not allege that he had arranged a plea agreement with the government, this inference on the Appellant's behalf is buttressed by the affidavit of Rodriquez dated February 6, 2002, in which Rodriquez recants his testimony stating that he did not testify truthfully at trial. (App. at 29.) More specifically, Rodriquez states that he did not see Appellant with a gun and that the Appellant was not the individual who shot him. (*Id.*) Without Rodriquez's testimony at trial identifying Appellant as the one who shot him, the Government's case against Appellant was weak. Accordingly, there was a reasonable probability that the undisclosed

information would have rendered a different outcome.

The Court therefore finds that the Appellant was denied his due process right to a fair trial by the Government's failure to disclose the information regarding Rodriguez's involvement in the robbery of September 8, 2000. As such, the Appellant is entitled to a new trial. The Court will, however, address the remaining issues in the alternative.

## C. Appellant's Attorney Rendered Effective Assistance at Trial.

Appellant also alleges that he is entitled to a new trial because of the ineffective assistance of his attorney. More specifically, Appellant argues that his attorney rendered ineffective assistance by failing to object to the expert testimony of Rosati at trial and by failing to subpoena Williams to corroborate his testimony.

The Government, on the other hand, contends that Appellant was not denied effective assistance of his counsel. According to the Government, the Appellant's allegations do not address the question of whether the trial in this matter was unfair or unreliable.

"Ordinarily, a claim of ineffective assistance of trial counsel is not appropriately reviewed for the first time on direct appeal, but must be raised by a collateral proceeding because the necessary facts about counsel's representation of the defendant have not been developed." *Rivera v. Government of the Virgin Islands*, 37 V.I. 68, 79 (D.V.I.App.Div.1997) (citation omitted). If the appellate court determines that an adequate record was provided in order to determine this issue, however, it may decide that a collateral proceeding is not necessary. *Rivera* 37 V.I. at 79. (citation omitted). The Court finds the record adequate in this case and will therefore proceed to consider whether

the Appellant was denied effective assistance of counsel.

The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984). The Supreme Court has found that this right is needed to "protect the fundamental right to a fair trial" which is guaranteed through the due process clauses of the United States Constitution. *Id.* at 684–685. The Third Circuit has determined that the Sixth Amendment right to counsel encompasses the right to effective assistance of counsel. *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir.1993). The Sixth Amendment applies to Virgin Islands Courts through Section 3 of the Revised Organic Act of 1954.[6] *Government v. King*, 25 V.I. 114, 117 (Terr.Ct.1990).

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052. Under this standard, a defendant convicted of a crime must establish the existence of two factors: 1.) counsel's performance was deficient and 2.) counsel's deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. A defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Nix v. Whiteside*, 475 U.S. 157, 175, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986) (quoting *Strickland*). The Third Circuit has further determined that in order to prove that counsel's performance was deficient, a

defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Senk v. Zimmerman*, 886 F.2d 611, 615 (3d Cir. 1989) (quoting *Strickland*). Moreover, any scrutiny of counsel's performance "must be 'highly deferential.'" *Id.*

**1. Appellant's Attorney Did Not Render Ineffective Assistance of Counsel by Failing to Object to Rosati's Expert Testimony about the Test Results of the Gunshot Residue Swabbings and the Fingerprints taken from the Scene of the Incident.**

■ Appellant contends that the expert testimony of Rosati "knotted together the thin strands of circumstantial evidence that allowed the jury to find beyond a reasonable doubt that Appellant shot and killed Miguel Crispin." (Brief of Appellant at 15). In other words, Appellant reasons that, without Rosati's testimony that Miguel Crispin was shot with the same gun that shot Rodriquez, Appellant would not have been convicted of murder. By failing to object to this testimony or, in the alternative, by failing to request a continuance in order to obtain a rebuttal expert witness, Appellant asserts that the representation of his attorney was deficient. The Court disagrees with this assertion.

The record shows and the Appellant admits that prior to trial, his counsel made a demand for discovery upon the Government for the "names and addresses of individual witnesses who the Government intends to call at trial ...." (App. at 6(11).) Additionally, Appellant's counsel asked the Government to promptly notify her or the Court of any "additional evi-

---

6. Revised Organic Act of 1954, § 3, 48 U.S.C. § 1561, reprinted in V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86–102 (1995) (preceding V.I. CODE ANN. tit. 1).

dence or material previously requested or ordered, which is subject to discovery or inspection under the Federal Rule of Criminal Procedure 16(c) ...." (App. at 9.)

The record also shows that Appellant's claim that his attorney failed to object to the Government's use of Rosati's testimony at trial is completely false. A few days before trial, the Government disclosed its intent to call Rosati as a witness at trial. The Appellant admits that on the first day of trial his attorney filed a written objection to this disclosure. Moreover, the record indicates that counsel noted her limited objection to the testimony of Rosati and the following colloquy ensued:

MS. VAZZANA: Actually, Your Honor, it's a point of clarification. In the beginning of the trial, I had an objection to the Government calling any expert witnesses; because they had not provided anything other than that FBI reports. And any testimony would be limited to just the contents of the report, without giving opinions or implications; and that was granted.

I, this morning, received a curriculum vitae of an expert who the Government intends to call, who was not a person who collected the FBI material nor performed the—

THE COURT: Who are you referring to?

MS. VAZZANA: It's on the witness list, which is provided on the day of trial; his name is Rosati.

MR. MARSHACK: May I provide a copy of the curriculum vitae to the Court?

THE COURT: You may submit it. And what's your problem?

MS. VAZZANA: Surprise. I have not received any summaries pursuant to Rule 16 of the Federal Rules of Criminal Procedure. I have not received any summaries or any information about what this witness will testify to; that will be extremely prejudicial to the defendant's case.

THE COURT: Did you receive the lab reports?

MS. VAZZANA: Yes, sir.

THE COURT: Isn't this the person who performed the lab reports who will testify?

MS. VAZZANA: That's my understanding.

THE COURT: I look at his present job history. He is a firearms and toolmarks examiner in the FBI laboratory.

MS. VAZZANA: Yeah, if you look at the reports that were provided-

MR. MARSHACK: Your Honor, we are only going to have him testify to the report that he prepared. That report is dated September 5th in the year 2000. And it is performed— or described exactly what he did. All he is going to tell the Jury is why what he did works. How it functions.

I note for the Court, appended to the two-page curriculum vitae is his most recently published article in which he was asked by the National Park Service to test the authenticity of the gun housed at the Ford Theater, which was believed to have been the gun that shot Abraham Lincoln. And it shows the workup and mechanisms by which those tests were performed, merely by example. I'm not going to ask him about Abraham Lincoln. But it was just for the purpose of providing counsel with some background on what kinds of mechanisms are used to do firearm identification work.

We are not going to ask for information performed by any other laboratory. It doesn't subtract from the contents of the report. All it does is say why the

Jury might consider giving some credence to what it is he is about to say; and my sister is perfectly welcome to tell the Jury why she thinks— determines that he doesn't know what he is talking about, if that is the case.

THE COURT: The person you refer as your sister is Attorney Vazzana. That's your attorney, not your sister.

MR. MARSHACK: Very well, Your Honor.

MS. VAZZANA: Your Honor, I have no problem if he is just going to be limited to the report he prepared on November the 5th. There were several FBI reports proffered.

THE COURT: If he strays from the promised testimony, you may object. Other than that, you have no objection?

MS. VAZZANA: That's right.

THE COURT: Thank you.

(App. at 44–45 (7–10).) Thus, the trial court allowed Rosati to testify concerning the FBI reports containing the test results of the gunshot residue swabbings as he was the one who performed the tests on said swabbings. (*Id.*) Also significant is the fact that Appellant's attorney did cross-examine Rosati and was able to establish that he did not find any gunshot residue on the Appellant's clothing. (App. at 55(86).) This information most certainly helped to bolster the Appellant's case.

Accordingly, nothing in the record indicates that the conduct of Appellant's counsel fell below an objective standard of reasonableness. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

"There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Id.* This presumption must be overcome by a defendant. *Id.* In the instant case, the Appellant has failed to overcome this presumption. Because Appellant has failed to meet this first prong, there is no need to address the second prong, i.e., whether the defense was prejudiced.

### 2. Appellant's Attorney Did Not Render Ineffective Assistance of Counsel by Failing to call Kasim Williams to Corroborate Appellant's Testimony.

The Court finds that Appellant's claim that his counsel rendered ineffective assistance by failing to call Williams to testify on his behalf is meritless. Appellant contends that the testimony of Williams would have corroborated his testimony and contradicted Rodriguez's testimony. More specifically, Appellant argues that, based on his statement to the police, Williams would have testified that Rodriguez was the aggressor on the night of the incident and that Rodriguez was armed with a broken Heineken bottle. (App. at 35–42.) The Appellant further argues that Williams would have testified that Appellant tried to part the fight between Rodriguez and Isaac. (*Id.*)

The record shows that Rodriquez, the Government's key witness, who was shot at the scene of the crime, was adamant at trial that Appellant was the shooter. (App. at 47(97).) In light of his testimony, it seems highly unlikely that the testimony of Williams, as a friend of the Appellant, could have cast any doubt on the credibility of Rodriquez. Again, Appellant has failed to overcome the presumption that his counsel's conduct fell within the range of reasonable professional assistance. Ac-

cordingly, there is no reason to address the second prong of the *Strickland* test.

The Court therefore finds that Appellant's challenge to his conviction based on ineffective assistance of counsel during the trial in this matter must fail.

### D. The Trial Court Did Not Err In Denying Appellant's Request to make Further Inquiry into the Response of Juror No. 8 During the Polling of the Jurors.

Appellant urges that the trial judge erred by failing to make further inquiry into the response of Juror No. 8 during the polling of the jury after the verdict was rendered. According to the Appellant, the fact that Juror No. 8 was crying during the polling, thereby creating a "commotion," indicated that she had been coerced into signing the verdict or had changed her mind about the verdict. (Brief of Appellant at 19.) In response, the Government states that the record clearly shows that the trial judge was fair and careful in conducting the poll of the jurors. Moreover, the Government asserts that the emotional state of Juror No. 8 may have been caused by a number of other reasons.

During the polling of the jury, the clerk questioned each juror individually. The following colloquy ensued with Juror No. 8:

THE CLERK: Juror No. 8, is that your independent verdict?

THE COURT: Can you respond to the question?

JUROR NO. 8: No, Your Honor.

THE COURT: You cannot? Are the verdict forms as read by the foreperson of the Jury correct, Juror No. 8?

JUROR NO. 8: Yes.

THE COURT: Are those your independent verdicts? You have to answer.

JUROR NO. 8: Yes, Your Honor.

THE COURT: Very well.

(App. at 56(5–6).)

At the end of the poll, Appellant's attorney requested further inquiry of Juror No. 8, and the following colloquy ensued:

THE COURT: What inquiry do you want of Juror No. 8?

MS. VAZZANA: Is she satisfied with the verdict; is that her independent judgment; does she harbor reasonable doubt?

THE COURT: The Juror, notwithstanding the emotion displayed in court the Juror was crying—— the Juror did indicate to the Court that all three verdicts are her independent verdict; and she did sign the verdict form. is that correct, Juror No. 8?

JUROR NO. 8: Yes, Your Honor.

THE COURT: Very well. The Court is satisfied that Juror No.8 has responded correctly to the poll of the juries; and notwithstanding the display of emotion, has responded affirmatively that the verdicts as read by the foreperson of the Jury is, in fact, her independent verdict.

(App. at 56(6–7).)

"The right to poll the jury is one of long standing in both the federal ... and most state courts." *Government of the Virgin Islands v. Hercules*, 875 F.2d 414, 417 (3d Cir.1989) (*quoting Jaca Hernandez v. Delgado*, 375 F.2d 584, 585 (1st Cir.1967)). This right is derived from Rule 31(d) of the Federal Rules of Criminal Procedure. *Hercules*, 875 F.2d at 417. (citation omitted). The manner in which a poll is conducted is left to the discretion of the trial judge. *Id.* at 418.

The purpose of the polling of a jury is to allow each juror the opportunity to declare his or her assent to the verdict in open court in order to ascertain with

certainty that the verdict was indeed unanimous. *Hercules,* 875 F.2d at 418 (citation omitted). This also allows the court to ascertain that no juror has been coerced into agreeing to a verdict. *Id.* At the time of polling, a juror is entitled to change his mind about a verdict he previously agreed to. *Hercules,* 875 F.2d at 418 (citation omitted). Note, however, that "[t]he purpose of affording a right to have the jury polled is not to invite each juror to reconsider his decision. . . ." *United States v. Shepherd,* 576 F.2d 719, 725 (7th Cir.1978).

 "The test for validity of the verdict is whether it 'was certain, unqualified and unambiguous considering the circumstances of the receipt of the verdict and poll of the jurors relative to their verdict.'" *Hercules,* 875 F.2d at 418 (citation omitted). "Upon any appearance of uncertainty or contingency in a jury's verdict, it is the duty of the trial judge to resolve that doubt . . . ." *United States v. Morris,* 612 F.2d 483, 489 (10th Cir.1979); *see also Cook v. United States,* 379 F.2d 966, 970 (5th cir.1967), and *Sincox v. United States,* 571 F.2d 876, 878 (5th Cir.1978).

Upon review of the record, the Court finds that the crying of Juror No. 8 is not an indication that she disagreed with the verdict. The facts in the present case are not the same facts as in *Sincox* where the juror actually stated that he had a reasonable doubt as to the verdict. *Sincox,* 571 F.2d at 878. There the Fifth Circuit Court of Appeals found that "the trial judge had a duty either to order the jury to retire for further deliberations or to dismiss them." *Id.* Nor are these facts similar to those in *Morris* where the jury foreman actually changed his verdict to "no" when he was polled concerning the guilt of a fifth co-defendant where the offense charged required five or more persons to be involved in the commission of the crime charged. *Morris,* 612 F.2d at

490. In that case, the trial judge sent the jury back to further deliberate the verdict on the fifth co-defendant. *Id.* The Tenth Circuit Court of Appeals found that the trial judge, in order to remove the cloud from the verdict, should have had the jury reconsider all of the verdicts instead of restricting their deliberations to the verdict on the fifth co-defendant. *Id.*

In all of these cases, the uncertainty or ambiguity about the jury verdict resulted from a juror's affirmative indication that he disagreed with the verdict. This is not the case here. Rather, there is mere speculation as to the response of Juror No. 8. In fact, the trial judge, on two occasions during the polling of the jurors, gave Juror No. 8 the opportunity to state whether she agreed with the verdict. Thus, the trial judge correctly decided not to allow any further inquiry into that juror's response.

The Court therefore finds that the trial judge did not abuse his discretion in his decision not to make further inquiry into the response of Juror No. 8.

## III. CONCLUSION

For the reasons stated, the Judgment and Commitment entered against the Appellant shall be vacated and this matter remanded for a new trial. An order of even date follows.

### ORDER OF THE COURT

**AND NOW** this 16th day of December 2002, having considered the arguments and submissions of the parties, and for the reasons set forth in the Court's accompanying opinion of even date, it is hereby

**ORDERED AND ADJUDGED** that the Judgment and Commitment entered against Appellant on February 28, 2001 is **VACATED**; and finally

**ORDERED AND ADJUDGED** that this matter is **REMANDED** for a new

trial in accordance with this Court's Opinion of even date.